ROBERT PATRICK STICHT (SBN 138586)
T. RUSSELL NOBILE*
ROBERT POPPER*
ERIC LEE (SBN 327002)
JUDICIAL WATCH, INC.
425 Third Street SW, Suite 800
Washington, D.C. 20024
Telephone: (202) 646-5172
Fax: (202) 646-5199
Email: rsticht@judicialwatch.org
Email: Rnobile@judicialwatch.org
Email: Rpopper@judicialwatch.org
Email: Elee@judicialwatch.org

*Application for admission pro hac vice forthcoming

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| DARRELL ISSA, JAMES B. OERDING, JERRY GRIFFIN, MICHELLE BOLOTIN, and MICHAEL SIENKIEWICZ<br><br>Plaintiffs,<br><br>v.<br><br>GAVIN NEWSOM, in his official capacity as Governor of the State of California, and ALEX PADILLA, in his official capacity as Secretary of State of California,<br><br>Defendants. | Case No.<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

Plaintiffs Darrell Issa, James B. Oerding, Jerry Griffin, Michelle Bolotin, and Michael Sienkiewicz, by and through the undersigned counsel, file this Complaint for Declaratory and Injunctive Relief against Defendant Governor Gavin Newsom and Secretary of State Alex Padilla, in their official capacities, and allege as follows:

1. Plaintiffs are a candidate for federal office and four registered California voters, including Republicans, a Democrat, and an independent, all of whom seek

declaratory and injunctive relief to enjoin Executive Order N-64-20 ("EO N-64-20"), which Governor Gavin Newsom issued on May 8, 2020.

2. EO N-64-20 mandates that all of California's 58 counties implement all-mail ballot elections for the November 3, 2020 federal elections. Plaintiffs allege that the Order violates both the Elections Clause and Electors Clause of the U.S. Constitution and impermissibly violates their federal constitutional and statutory rights. Additionally, Plaintiffs allege the Order is *ultra vires* under state law.

## JURISDICTION AND VENUE

3. This Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1343 because the matters in controversy arise under the Constitution and laws of the United States.

4. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because a Defendant resides in this district and because a substantial part of the events and omissions giving rise to the claims herein occurred in this district.

5. This Court has the authority to enter a declaratory judgment and to provide injunctive relief pursuant to Rules 57 and 65 of the Federal Rules of Civil Procedure and 28 U.S.C. §§ 2201 and 2202.

## PARTIES

6. Plaintiff Darrell Issa is a resident and a registered voter of San Diego County, California, who intends to vote in the presidential and congressional elections on November 3, 2020. Mr. Issa is also a candidate for United States Representative for the 50th District, which includes San Diego County and Riverside County. San Diego County and Riverside County have neither qualified nor opted to implement all-mail ballot elections under California's Voter's Choice Act (S.B. 450, 2015-2016 Reg. Sess. (Cal. 2016); the "VCA"), prior to the issuance of EO N-64-20.

7. Plaintiff James B. Oerding is a resident and a registered voter of Yolo County, California, who intends to vote in the presidential and congressional elections

on November 3, 2020.  Dr. Oerding resides in California's 3rd Congressional District, which includes parts of five counites: Glenn County, Lake County, Sacramento County Solano County, and Yolo County.  Yolo County, as well as Glenn, Lake, and Solano Counties, had neither qualified nor opted to implement all-mail elections under the VCA prior.  Sacramento County had qualified and opted to implement all-mail ballot elections under the VCA beginning in 2018.

8. Plaintiff Jerry Griffin is a resident and a registered voter of Los Angeles County, California, who intends to vote in the presidential and congressional elections on November 3, 2020.  Mr. Griffin resides in California's 47th Congressional District, which is includes portions of Los Angeles County and Orange County.  Los Angeles County had qualified and opted to implement all-mailed ballot elections under the VCA beginning in 2020.

9. Plaintiff Michelle Bolotin is a resident and a registered voter of Los Angeles County, California, who intends to vote in the presidential and congressional elections on November 3, 2020.  Ms. Bolotin resides in California's 33rd Congressional District, which is wholly within Los Angeles County.

10. Plaintiff Michael Sienkiewicz is a resident and a registered voter of San Francisco County, California, who intends to vote in the presidential and congressional elections on November 3, 2020.  Mr. Sienkiewicz resides in California's 12th Congressional District.  San Francisco County, in which all of the 12th District is located, has neither qualified nor opted to implement all-mail elections under the VCA.

11. Defendant Gavin Newsom is the Governor of the State of California.  As Governor, he is vested with the executive power of the state.  Cal. Const., art. V, § 1. He announced EO N-64-20, which mandates a new, statewide all-mail ballot system for the November 3, 2020 federal election.

12. Defendant Alex Padilla is the California Secretary of State and the state's Chief Elections Officer.  CAL. ELEC. CODE § 10.  He and his office are chiefly

Complaint for Declaratory
and Injunctive Relief

responsible for overseeing the implementation of the new all-mail ballot system ordered by Governor Newsom in EO N-64-20.

13. Defendants Newsom and Padilla are sued in their official capacities only.

## STATEMENT OF FACTS

14. Plaintiffs bring this action under 42 U.S.C. §§ 1983 and 1988 to remedy deprivations of rights, privileges, or immunities secured by the Constitution and laws of the United States.

15. The United States Constitution sets forth the authority to regulate federal elections. With respect to congressional elections, the Constitution provides:

> The Times, Places and Manner of holding Elections for Senators and Representatives, shall be prescribed in each State by the Legislature thereof; but the Congress may at any time by Law make or alter such Regulations, except as to the Places of chusing Senators.

U.S. Const. art. I, § 4 ("Elections Clause").

16. With respect to the appointment of presidential electors, the Constitution provides:

> Each State shall appoint, in such Manner as the Legislature thereof may direct, a Number of Electors, equal to the whole Number of Senators and Representatives to which the State may be entitled in the Congress: but no Senator or Representative, or Person holding an Office of Trust or Profit under the United States, shall be appointed an Elector.

U.S. Const. art. II, § 1 ("Electors Clause").

17. Neither Defendant is a "Legislature" as required under the Elections Clause or Electors Clause.

18. In 2016, the California Legislature adopted the VCA, establishing an all-mail ballot system in which counties could conduct vote-by-mail elections provided they qualified and opted for the system.

19. The VCA sets forth numerous qualifications that every county must satisfy before becoming eligible to opt in.[1] CAL. ELEC. CODE § 4005(a)(1)-(10).

20. Adoption of the VCA's all-mail system is permissive and the affirmative decision to adopt it rests with each county and its election officials.

21. The VCA reflects the California Legislature's deliberate choice to delegate to each county the decision about whether to qualify and opt in.

22. In 2018, the first election in which the VCA was in force, the Legislature only allowed fourteen enumerated counties to qualify and opt in.[2] CAL. ELEC. CODE § 4005(a). All other counties were granted the authority to qualify and opt in to the VCA beginning January 1, 2020.

23. Only five of the fourteen enumerated counties opted in to the VCA's all-mail system during the 2018 elections.[3]

24. Ten additional counties, including some not originally authorized in 2018, qualified and opted in to the VCA's all-mail system for the 2020 elections.[4]

25. During the March 3, 2020 federal primary, fifteen California counties conducted all-mailed ballot elections pursuant to the VCA, including Los Angeles County where Plaintiffs Griffin and Bolotin reside.

26. Los Angeles County's implementation of the VCA's all-mail system during the March primary was widely panned. Local media reports described it as an

---

[1] The VCA established unique qualifications required for Los Angeles County. CAL. ELEC. CODE § 4007.

[2] The fourteen counties initially allowed to opt in were Calaveras, Inyo, Madera, Napa, Nevada, Orange, Sacramento, San Luis Obispo, San Mateo, Santa Clara, Shasta, Sierra, Sutter, and Tuolumne.

[3] Those conducting vote-by-mail balloting were Madera, Napa, Nevada, Sacramento, and San Mateo.

[4] The ten new counties opting to conduct their elections by mail are Amador, Butte, Calaveras, El Dorado, Fresno, Los Angeles, Mariposa, Orange, Santa Clara, and Tuolumne.

example of "legitimate incompetence"[5] while the national media referred to it as a "voting fiasco."[6]

27. The focus on Los Angeles County's "fiasco" was necessarily short lived, because the very next day Governor Newsom proclaimed a state of emergency in response to the COVID-19 epidemic. *See* Exhibit 1, *Proclamation of a State of Emergency*, March. 4, 2020.

28. In it, Governor Newsom found that conditions justified his declaration and that local authorities were inadequate to cope with the emergency. *Id.* (citing CAL. GOV'T CODE §§ 8558(b) and 8625).

29. He further found that "strict compliance with various statutes and regulations specified in this order would prevent, hinder, or delay appropriate actions to prevent and mitigate the effects of COVID-19." *Id.* at 2 (citing CAL. GOV'T CODE § 8571).

30. CAL. GOV'T CODE § 8571 provides:

> During a state of war emergency or a state of emergency the Governor may suspend any regulatory statute, or statute prescribing the procedure for conduct of state business, or the orders, rules, or regulations of any state agency, including subdivision (d) of Section 1253 of the Unemployment Insurance Code, where the Governor determines and declares that strict compliance with any statute, order, rule, or regulation would in any way prevent, hinder, or delay the mitigation of the effects of the emergency.

31. Based on these and other findings, Governor Newsom proclaimed a state of emergency "in accordance to the authority vested in me by the State Constitution and statutes, including the California Emergency Services Act, and in particular, Government Code section 8625." *Id.*

---

[5] John Myers, et al., *California Officials Demand Changes to L.A. Voting After Election Day Chaos*, L.A. TIMES, Mar. 4, 2020, available at https://rb.gy/5hpx42 (last visited May 20, 2020).

[6] Wall. St. J. Editorial, "*California Steals Its Own Election,*" WALL ST. J., Mar. 6, 2020 https://rb.gy/dimkie (last visited May 20, 2020).

Complaint for Declaratory and Injunctive Relief

32. While this emergency proclamation included numerous directives changing state practices and the use of state resources, it was silent regarding state election law.

33. The initial emergency proclamation does not provide an expiration date.

34. By law, the Governor must end the state of emergency at the earliest possible date at which time all of his emergency powers will terminate. CAL. GOV'T CODE § 8629.

35. On May 8, 2020, Governor Newsom issued EO N-64-20, attempting to supersede and rewrite California's election law for the November 3, 2020 federal election. *See* Exhibit 2, *Executive Order N-64-20*, May 8, 2020.

36. Governor Newsom set forth several findings in the preamble to EO N-64-20, including that "all Californians" needed to be empowered to vote by mail to preserve the public health. *Id*.

37. EO N-64-20 acknowledged that it is still "unknown […] to what degree COVID-19 will pose a threat to the public health in November[.]" *Id.*

38. As he did in his March 2020 emergency proclamation, Governor Newsom again found that "strict compliance with various statutes and regulations specified in this order would prevent, hinder, or delay appropriate actions to prevent and mitigate the effects of COVID-19." *Id.* at 2 (citing CAL. GOV'T CODE § 8571).

39. Governor Newsom also cited two additional statutes in EO N-64-20 that were not previously cited in the emergency proclamation. First, he cited CAL. GOV'T CODE § 8567, which provides that he "may make, amend, and rescind orders and regulations necessary to carry out the provisions of this chapter. The orders and regulations shall have the force and effect of law."

40. He also cited CAL. GOV'T CODE § 8627, which provides:

> During a state of emergency the Governor shall, to the extent he deems necessary, have complete authority over all agencies of the state government and the right to exercise within the area designated all police power vested in the state by the Constitution

Case 2:20-cv-01044-MCE-CKD   Document 1   Filed 05/21/20   Page 8 of 14

> and laws of the State of California in order to effectuate the purposes of this chapter. In exercise thereof, he shall promulgate, issue, and enforce such orders and regulations as he deems necessary, in accordance with the provisions of Section 8567.

41. Based on this authority, Governor Newsom ordered the following changes to how Californians will elect their congressional representatives and presidential electors during the November 3, 2020 federal election:

> 1) Notwithstanding any limitation on the distribution of vote-by-mail ballots in Elections Code sections 1500 and 4000-4007, or any other provision of state law, each county elections officials shall transmit vote-by-mail ballots for the November 3, 2020 General Election to all voters who are, as of the last day on which vote-by-mail ballots may be transmitted to voters in connection with that election, registered to vote in that election. As set forth in this paragraph, every Californian who is eligible to vote in the November 3, 2020 General Election shall receive a vote-by-mail ballot.
>
> 2) Nothing in this Order shall be construed to limit the extent to which in-person voting opportunities are made available in connection with the November 3, 2020 General Election. It is the intent of this Order that my Administration continue to work with the Legislature and the Secretary of State to determine how requirements for in-person voting opportunities and other details of the November election will be implemented—guided by California's longstanding commitment to making its elections accessible, as enshrined in existing California law, while recognizing the exigencies of the COVID-19 pandemic.
>
> 3) My Administration continues working in partnership with the Secretary of State and the Legislature on requirements for in-person voting opportunities and on how other details of the November election will be implemented. Nothing in this Order is intended, or shall be construed, to limit the enactment of legislation on that subject.

Exhibit 2 at 2.

42. The Order does not specify which "statutes and regulations" cannot be strictly complied with and must be suspended. *See* CAL. GOV'T CODE §8571.

43. The all-mail system ordered by Governor Newsom in EO N-64-20 is an unlawful attempt to supersede and replace California election law, including the VCA, by imposing an entirely new system without the many qualifications required by the California Legislature before a county can opt in to all-mail balloting.

8

Complaint for Declaratory and Injunctive Relief

44. The non-VCA counties mandated under EO N-64-20 to adopt all-mail elections will do so without the extensive qualifications and protections required by the legislature under the VCA. CAL. ELEC. CODE § 4005(a)(1)-(10). Moreover, it deprives counties and county election officials of their choice under the VCA about whether to adopt all-mail voting systems.

45. For example, the voting systems in which Plaintiffs Issa, Oerding, and Sienkiewicz will vote on November 3, 2020 will lack the extensive qualifications that the California Legislature determined counties must satisfy before adopting the VCA system.[7]

46. Congressional districts which cover both VCA and non-VCA counties will elect their congressional representatives using two drastically different election systems during the same election, one lawfully enacted system, the other *ultra vires*. This is the case for the 3rd Congressional District, where Dr. Oerding votes.

47. The new procedures in EO N-64-20 are *ultra vires* and will lead to controversies over the validity and legitimacy of the outcomes of the pending federal elections, or of any elections held pursuant to those procedures.

48. There is a substantial likelihood that EO N-64-20 will lead to post-election intervention by federal courts under the Ninth Circuit's "fundamental unfairness" doctrine. *Bennett v. Yoshina*, 140 F.3d 1218, 1226 (9th Cir. 1998)(applying *Griffin v. Burns*, 570 F.2d 1065 (1st Cir. 1978)).

49. Plaintiffs who vote lawfully under the pre-existing California law, assuming they can following EO N-64-20, risk their votes being diluted by unlawful votes casts under the *ultra vires* system mandated by EO N-64-20.

---

[7] Upon information and belief, VCA counties will still conduct their elections according to the VCA. It is unclear whether EO N-64-20 suspends or supersedes the VCA in counties that previously adopted and implemented it.

50. Alternatively, Plaintiffs who vote under the unlawful *ultra vires* system mandated by EO N-64-20 risk being disenfranchised because their votes will be set aside.

51. Many federal elections in California on November 3, 2020 are at risk of post-election challenges and lawsuits. EO N-64-20 creates a significant risk that votes by large portions of the electorate will be set aside once a court determines, as it must, that EO N-64-20 is *ultra vires* under state and federal law.

52. For example, votes cast in the 50th Congressional District according to EO N-64-20 will be open to challenge as a result of Governor Newsom's *ultra vires* acts, risking that a court might invalidate the outcome.

53. Additionally, Mr. Issa has already had to reevaluate his electoral strategy in order to campaign in the 50th Congressional District as a result of EO N-64-20. Previously, he registered to run for office based under the electoral system established by the California Legislature. Now, he must develop a new strategy to reflect that he is no longer running under an electoral system established under California law, but under the *ultra vires* system set forth in EO N-64-20.

54. As a direct result of EO N-64-20, the costs for running for the 50th Congressional District have increased.

55. EO N-64-20 does nothing to resolve the monumental problems that occurred in Los Angeles County during the March 3, 2020 federal primary. Plaintiffs Griffin and Bolotin intend to vote in the November 2020 federal election and there is a real risk that EO N-64-20 will exacerbate, not alleviate, the significant problems revealed during that primary.

56. Plaintiffs are not required to wait for the outcome of an election pursuant to *ultra vires* election procedures before seeking court relief. Moreover, if the injuries to EO N-64-20 are not cured prior to the November election, appropriate post-election relief may not be available to Plaintiffs.

57. Under the Elections Clause, only the State of California, "by the Legislature thereof," is authorized to change the time, place, and manner in which Californians will choose their senators and representatives. U.S. CONST. art. I, § 4.

58. Under the Electors Clause, the State of California shall appoint presidential electors "in such Manner as the Legislature thereof may direct." U.S. CONST. art. II, § 1.

59. The California Legislature never delegated to Defendants its authority under the Elections Clause or Electors Clause to regulate the manner of conducting elections for senators, representatives, or presidential electors.

60. To the extent the California Legislature delegated its authority under the Elections Clause or Electors Clause to regulate the time, place, or manner of conducting elections for senators, representatives, or presidential electors, it was delegated to the counties and county election officials, not Defendants, under the VCA's permissive opt-in regime.

61. As a result of EO N-64-20, 43 of 58 counties are now being forced to implement all-mail ballot elections by Defendants, despite the fact that they have not implemented the qualifications set forth by the California Legislature under the VCA or made the affirmative choice to opt in.

### COUNT I
(*Violation of the Elections Clause and 42 U.S.C. § 1983*)

62. Plaintiffs reallege all preceding paragraphs as if fully set forth herein.

63. EO N-64-20 changes the time, place, and manner in which Californians will choose their senators and congressmen during the November 3, 2020 federal elections.

64. Neither Defendant is a "Legislature" under the Elections Clause.

65. Defendants have acted and, unless enjoined, will act under color of state law to violate the Elections Clause.

Complaint for Declaratory and Injunctive Relief

66. Plaintiffs have no adequate remedy at law and will suffer serious and irreparable harm to their constitutional rights unless Defendants are enjoined from implementing and enforcing EO N-64-20.

## COUNT II
*(Violation of the Electors Clause and 42 U.S.C. § 1983)*

67. Plaintiffs reallege all preceding paragraphs as if fully set forth herein.

68. EO N-64-20 changes the manner in which Californians will appoint electors during November 3, 2020 presidential election. U.S. CONST. art. II, § 1.

69. Neither Defendant is a "Legislature" under the Electors Clause.

70. Defendants have acted and, unless enjoined, will act under color of state law to violate the Electors Clause.

71. Plaintiffs have no adequate remedy at law and will suffer serious and irreparable harm to their constitutional rights unless Defendants are enjoined from implementing and enforcing EO N-64-20.

## COUNT III
*(Violation of the Due Process Clause under the 14th Amendment and 42 U.S.C. § 1983)*

72. Plaintiffs reallege all preceding paragraphs as if fully set forth herein.

73. The Due Process Clause of the United States Constitution prohibits the states from depriving "any person of . . . liberty . . . without due process of law." U.S. Const. amend. XIV, § 1.

74. An election is a denial of substantive due process if it is conducted in a manner that is fundamentally unfair.

75. EO N-64-20 deprives Plaintiffs of their due process rights related to the November 3, 2020 election.

## COUNT IV
### (Ultra Vires *Under State Law*)

76. Plaintiffs reallege all preceding paragraphs as if fully set forth herein.

77. Defendants' authority to compel all-mail ballot elections is limited by, and cannot go beyond, State law.

78. Defendants do not have the authority to compel all-mail ballot elections under either federal or state law.

79. EO N-64-20 does not "suspend any regulatory statute, or statute prescribing the procedure for conduct of state business, or the orders, rules, or regulations of any state agency[.]" CAL. GOV'T CODE § 8571.

80. The VCA is not a "regulatory statute, or statute prescribing the procedure for conduct of state business, or the orders, rules, or regulations of any state agency[.]" *Id.*

81. As a result of EO N-64-20, Plaintiffs have suffered or will suffer injuries.

82. Plaintiffs have no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs asks this Court to enter a judgement in their favor and provide the following relief:

a. A declaratory judgment declaring that Executive Order N-64-20 violates the Elections Clause, U.S. CONST. art. I, § 4;

b. A declaratory judgment declaring that Executive Order N-64-20 violates the Electors Clause, U.S. CONST. art. II, § 1;

c. A declaratory judgment declaring that Executive Order N-64-20 violates the Due Process Clause, U.S. CONST. Amend. XIV;

d. A declaratory judgment declaring that Executive Order N-64-20 is *ultra vires* under state law;

e. A permanent injunction prohibiting the Governor and Secretary of State from implementing, administering, and enforcing Executive Order N-64-20;

f. An order requiring Defendants to pay Plaintiffs' reasonable attorney's fees, including litigation expenses and costs; and

g. Awarding Plaintiffs such other and further relief as this Court deems just and proper.

May 21, 2020

Respectfully submitted,

JUDICIAL WATCH, INC.

By: _____
ROBERT PATRICK STICHT
T. RUSSELL NOBILE*
ROBERT D. POPPER*
ERIC LEE
425 Third Street SW, Suite 800
Washington, D.C. 20024
Telephone: (202) 646-5172
Fax: (202) 646-5199
Email: rsticht@judicialwatch.org
Email: Rnobile@judicialwatch.org
Email: Rpopper@judicialwatch.org
Email: Elee@judicialwatch.org

*Application for admission pro hac vice forthcoming*

Attorneys for Plaintiffs