1  MARC E. ELIAS, ESQ. (D.C. Bar No. 442007) (*pro hac vice pending*)
   HENRY J. BREWSTER, ESQ. (D.C. Bar No. 1033410) (*pro hac vice pending*)
2  COURTNEY A. ELGART, ESQ. (D.C. Bar No. 1645065) (*pro hac vice pending*)
   **PERKINS COIE LLP**
3  700 Thirteenth St. NW, Suite 800
   Washington, D.C. 20005-3960
4  Tel: (202) 654-6200
5  melias@perkinscoie.com
   hbrewster@perkinscoie.com
6  celgart@perkinscoie.com

7  ABHA KHANNA, ESQ. (Wash. Bar No. 42612) (*pro hac vice pending*)
8  JONATHAN P. HAWLEY, ESQ. (SBN 319464), *counsel for service*
   **PERKINS COIE LLP**
9  1201 Third Avenue, Suite 4900
   Seattle, Washington 98101-3099
10 Tel: (206) 359-8000
11 akhanna@perkinscoie.com
   jhawley@perkinscoie.com

12
13 *Attorneys for Proposed Intervenor-Defendants*
   *DCCC and California Democratic Party*

14

15                    UNITED STATES DISTRICT COURT

16                    EASTERN DISTRICT OF CALIFORNIA

17

18 DARRELL ISSA, JAMES B. OERDING,          Case No.:      2:20-cv-01044-MCE-CKD
   JERRY GRIFFIN, MICHELLE BOLOTIN,
19 and MICHAEL SIENKIEWICZ,
                                            **REPLY IN SUPPORT OF MOTION**
20                        Plaintiffs,        **TO INTERVENE AS DEFENDANTS**

21            v.

22 GAVIN NEWSOM, in his official capacity as
   Governor of the State of California, and ALEX
23 PADILLA, in his official capacity as Secretary
   of State of California,
24
25                        Defendants,

26 and

27 DCCC and CALIFORNIA DEMOCRATIC

28

1   PARTY,

2                              Proposed
                             Intervenor-
3                            Defendants.

4

5          "[P]olitical parties usually have good cause to intervene in disputes over election rules."

6   Response to Proposed Intervenors' Motion to Intervene as Defendants at 1, *Republican Nat'l*

7   *Comm. v. Newsom*, No. 2:20-cv-01055-MCE-CKD (E.D. Cal. June 5, 2020).[1] Such is the case here

8   for Proposed Intervenor-Defendants DCCC and California Democratic Party (together, "Proposed

9   Intervenors"). Plaintiffs' attempt to undo Defendants' plans for a primarily all-mail system for the

10  November 3, 2020 general election (the "Election") risks impairment of Proposed Intervenors'

11  legally protected rights. And because Proposed Intervenors' interests in this litigation—ensuring

12  the franchise of their members, promoting the electoral success of their party, and efficiently

13  allocating their limited organizational resources—differ from Defendants', they cannot rely on

14  Defendants to provide adequate representation.

15         In their motion to intervene as defendants, *see* ECF No. 12 ("Mot."), Proposed Intervenors

16  demonstrated their entitlement to intervention as of right under Federal Rule of Civil Procedure

17  24(a)(2) and permissive intervention under Rule 24(b). Plaintiffs oppose, *see* ECF No. 17

18  ("Opp."), largely by ignoring Proposed Intervenors' arguments and mischaracterizing the

19  applicable legal standards. But ultimately, "courts generally 'construe [Rule 24] broadly in favor

20  of proposed intervenors,'" *Conservation Cong. v. U.S. Forest Serv.*, No. 2:16-cv-00864-MCE-AC,

21  2018 WL 529484, at *1 (E.D. Cal. Jan. 23, 2018) (quoting *United States v. City of Los Angeles*,

22  288 F.3d 391, 397 (9th Cir. 2002)), and for the reasons discussed in their motion and below,

23

24  _____

25  [1] Accordingly, courts regularly permit the intervention of political parties and affiliated
    organizations in cases involving elections and voting rights. *See, e.g.*, *Paher v. Cegavske*, No. 3:20-
26  cv-00243-MMD-WGC, 2020 WL 2042365, at *1 (D. Nev. Apr. 28, 2020); *Stringer v. Pablos*, No.
    5:16-cv-00257-OLG, slip op. at 1 (W.D. Tex. Jan. 21, 2020); *Harris Cty. Dep't of Educ. v. Harris
27  County*, Civil Action No. H-12-2190, 2012 WL 3886427, at *1 (S.D. Tex. Sept. 6, 2012); *NAACP
    v. Snyder*, No. 11-153845, slip op. at 1–2 (E.D. Mich. Jan. 23, 2012).

28

REPLY ISO MOTION TO INTERVENE AS DEFENDANTS—PAGE 2

Proposed Intervenors readily satisfy Rule 24's requirements.

**ARGUMENT**

For an applicant to intervene as of right under Rule 24(a)(2),

> (1) the motion must be timely; (2) the applicant must claim a "significantly protectable interest" in the action; (3) the disposition of the action must as a practical matter impair or impede the applicant's ability to protect that interest; and (4) the applicant's interest may be inadequately represented by the other parties.

*W. States Trucking Ass'n v. Schoorl*, No. 2:18-cv-1989-MCE-KJN, 2018 WL 5920148, at *1 (E.D. Cal. Nov. 13, 2018) (quoting *Allied Concrete & Supply Co. v. Baker*, 904 F.3d 1053, 1067 (9th Cir. 2018)). Proposed Intervenors satisfy each of these requirements.[2]

## I. Proposed Intervenors have demonstrated significantly protectable interests that are impaired by Plaintiffs' causes of action.

Proposed Intervenors have significant protectable interests in this lawsuit that would be impaired by Plaintiffs' causes of action. Plaintiffs suggest that Proposed Intervenors "never articulate the protectable interest that justifies their intervention," Opp. at 3, but this is simply untrue. Proposed Intervenors identify not one, but *three* distinct interests that are implicated and threatened by Plaintiffs' lawsuit: (1) the right of their members to safely vote, (2) their electoral prospects, and (3) diversion of their organizational resources. *See* Mot. at 5–6.

Plaintiffs do not—and cannot—dispute that courts have routinely recognized each of these articulated interests as legally protected. Indeed, these interests should be familiar to Plaintiffs, as they represent the bases on which Plaintiffs premise their own standing in this litigation.[3] Plaintiffs instead lump all three of Proposed Intervenors' interests together and contend that "no voters will have to 'to choose between risking their health to vote in person and participating in the Election,'

---

[2] Plaintiffs do not dispute that Proposed Intervenors' motion is timely. *See* Mot. at 4.

[3] *See, e.g.*, Complaint, ECF No. 1, ¶ 50 ("Plaintiffs who vote under the unlawful *ultra vires* system mandated by EO N-64-20 risk being disenfranchised because their votes will be set aside."); *id.* ¶¶ 53–54 ("[Plaintiff Issa] must develop a new strategy to reflect that he is no longer running under an electoral system established under California law, but under the *ultra vires* system set forth in EO N-64-20. . . . As a direct result of EO N-64-20, the costs for running for the 50th Congressional District have increased.").

because voters concerned about COVID-19 could request an absentee ballot—as they always could." Opp. at 4 (citation omitted) (quoting Mot. at 5).

Plaintiffs are correct about one thing: "even prior to the governor's order, California voters could request an absentee, mail-in ballot, without having to provide any particular reason for doing so," and thus "[a]bsentee ballots will remain available to every California voter who wants one *with or without the governor's order*." *Id*. Proposed Intervenors agree that Defendants' plans for the Election neither constitute a dramatic deviation from normal California election practices nor dramatically increase the risk of voter fraud or compromise election integrity. But Plaintiffs are simply wrong to suggest that Plaintiffs' challenge to Defendants' plans will have no practical effect on either Democratic voters or the organizations that represent them.

First, although Plaintiffs gloss over this argument, Proposed Intervenors have an interest in preventing diversion of their organizational resources. *See* Mot. at 6; *see also, e.g.*, *Democratic Nat'l Comm. v. Reagan*, 329 F. Supp. 3d 824, 841 (D. Ariz. 2018) (finding standing where law "require[d] Democratic organizations . . . to retool their [get-out-the-vote] strategies and divert [] resources"), *rev'd on other grounds sub nom. Democratic Nat'l Comm. v. Hobbs*, 948 F.3d 989 (9th Cir. 2020) (en banc). If Plaintiffs were successful in thwarting Defendants' proactive distribution of mail ballots, and Proposed Intervenors were thus forced to expend their limited resources educating voters about the absentee system and assisting with absentee ballot application preparation and collection at a time when the need for absentee ballots will be high as a result of the ongoing pandemic, then Proposed Intervenors would indisputably "suffer a practical impairment of [their] interests." *W. States Trucking*, 2018 WL 5920148, at *2 (quoting *Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173, 1179 (9th Cir. 2011)).

Second, Plaintiffs do not dispute that Proposed Intervenors possess significant interests in both the ability of their members to vote, *see, e.g.*, *Crawford v. Marion Cty. Election Bd.*, 472 F.3d 949, 951 (7th Cir. 2007), *aff'd*, 553 U.S. 181 (2008), and the electoral prospects of the Democratic Party, *see, e.g.*, *Owen v. Mulligan*, 640 F.2d 1130, 1132 (9th Cir. 1981). Instead, Plaintiffs baldly assert that whether Defendants' plans are effectuated would have no practical impact on either of

these interests. *See* Opp. at 4. But if Plaintiffs prevail, then any voters who do not timely and successfully complete absentee ballot applications *would*, in all likelihood, be forced to "choose between risking their health to vote in person and participating in the Election," Mot. at 5—threatening both their own franchise *and* Proposed Intervenors' electoral prospects.[4] This unfair, unreasonable dilemma would be avoided if Plaintiffs' lawsuit is dismissed and Defendants' plan to proactively mail ballots is implemented, thus demonstrating the requisite "'relationship' between [Proposed Intervenors'] interest and [Plaintiffs'] claims." *Cal. Dump Truck Owners Ass'n v. Nichols*, 275 F.R.D. 303, 306 (E.D. Cal. 2011) (quoting *Donnelly v. Glickman*, 159 F.3d 405, 409 (9th Cir. 1998)); *see also id.* at 306–07 (proposed intervenor's "interests are sufficient to support intervention" where its members benefit from challenged policies).

Ultimately, as this Court has observed,

> given the liberal policy in favor of intervention, a would-be intervenor's interest is deemed "significantly protectable" under the Ninth Circuit's test when it "is protectable under some law, and . . . there is a relationship between the legally protected interest and the claims at issue" such that the intervenor may "suffer a practical impairment of its interests as a result of the pending litigation."

---

[4] This is not merely a speculative risk. Normal absentee ballot procedures require election officials to process, track, and respond to ballot applications on an ad hoc basis, rather than systematically mail ballots to all voters on a fixed timeline. Recent elections in other jurisdictions have demonstrated the significant administrative burdens that this process places on election officials, particularly as requests increase due to the pandemic. As a result, not all voters who needed absentee ballots received them. *See, e.g.*, Amy Gardner et al., *Primary Voters in 8 States and D.C. Faced Some Confusion, Long Lines and Poor Social Distancing*, Wash. Post (June 2, 2020), https://www.washingtonpost.com/politics/in-pennsylvania-officials-prepare-for-coronavirus-civil-unrest-to-disrupt-tuesday-primary/2020/06/02/96a55c40-a4be-11ea-b619-3f9133bbb482_story.html; Amelia Pak-Harvey, *Residents Report Issues with Absentee Ballots That Could Exclude Votes in Upcoming Primary*, Indianapolis Star (May 29, 2020), https://www.indystar.com/story/news/local/marion-county/2020/05/29/marion-county-voters-report-issues-absentee-ballots/5278382002; Katherine Gregg, *Many R.I. Voters Complain They Haven't Received Mail Ballots*, Providence J. (May 27, 2020), https://www.providencejournal.com/news/20200527/many-ri-voters-complain-they-havenrsquot-received-mail-ballots. During Wisconsin's April primary, some voters who did not receive their mail-in ballots were forced to vote in person. *See* Jim Malewitz, *Their Wisconsin Ballots Never Arrived. So They Risked a Pandemic. Or Stayed Home.*, Wis. Watch (Apr. 7, 2020), https://www.wisconsinwatch.org/2020/04/ballots-never-arrived-pandemic-or-stay-home.

REPLY ISO MOTION TO INTERVENE AS DEFENDANTS—PAGE 5

1  *W. States Trucking*, 2018 WL 5920148, at *2 (quoting *Wilderness Soc'y*, 630 F.3d at 1179).

2  Proposed Intervenors have readily satisfied this standard. They have identified three distinct and

3  significant interests, and demonstrated how those interests would be impaired if Plaintiffs impede

4  Defendants' efforts to allow Californians to safely vote by mail. This showing satisfies the

5  requirements under Rule 24(a)(2). *See Paher v. Cegavske*, No. 3:20-cv-00243-MMD-WGC, 2020

6  WL 2042365, at *2 (D. Nev. Apr. 28, 2020) (concluding that "Proposed Intervenors have

7  sufficiently shown that they maintain significant protectable interests which would be impaired by

8  Plaintiffs' challenge to the Plan's all-mail election provisions" given that "Plaintiffs' success on

9  their claims would disrupt the organizational intervenors' efforts to promote the franchise and

10  ensure the election of Democratic Party candidates").

11  **II.   Proposed Intervenors cannot rely on the existing parties to adequately represent their interests.**

12

13       As this Court has observed, "[t]he burden of showing that existing parties may inadequately

14  represent the [proposed intervenor's] interests is a minimal one. As noted by the Supreme Court,

15  all the applicant needs to show is that 'the representation of [its] interest "may be" inadequate.'"

16  *Nichols*, 275 F.R.D. at 307 (third alteration in original) (quoting *Trbovich v. United Mine Workers*

17  *of Am.*, 404 U.S. 528, 538 n.10 (1972)). Moreover, "[a]ny doubt as to whether the existing parties

18  will adequately represent the intervenor should be resolved in favor of intervention." *Id.* (citing

19  *Fed. Sav. & Loan Ins. Corp. v. Falls Chase Special Taxing Dist.*, 983 F.2d 211, 216 (11th Cir.

20  1993)). As discussed in their motion, Proposed Intervenors have satisfied this requirement. *See*

21  Mot. at 6–8.

22       In response, Plaintiffs attempt to elevate the burden, arguing that this is a case where

23  Proposed Intervenors must make a "compelling showing" of inadequate representation. Opp. at 5–

24  7.[5] It is true that adequacy of representation is presumed, and thus a heightened showing is

25  _____

26  [5] Plaintiffs also fault Proposed Intervenors for "failing even to attach an affidavit to their motion

27  papers." Opp. at 6. But they cite no authority for this requirement, and indeed, "a district court is

   required to accept as true the non-conclusory allegations made in support of an intervention

28

required, where "the government is acting on behalf of a constituency that it represents" or "the applicant's interest is identical to that of one of the present parties." *Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003). But crucially, neither of these scenarios is implicated here.

First, the presumption of adequate representation "does *not* necessarily apply in all cases to which the government is a party. After all, when the proposed intervenors' concern is not a matter of 'sovereign interest,' there is no reason to think the government will represent it." *Mausolf v. Babbitt*, 85 F.3d 1295, 1303 (8th Cir. 1996). That is the case here. As Plaintiffs themselves acknowledge, Defendants' interests in this case are "administer[ing] the provisions of the Elections Code" and "see[ing] that . . . state election laws are enforced," Opp. at 6 (alterations in original) (quoting Cal. Gov't Code § 12172.5(a))—in other words, sovereign interests. These are *not* the interests Proposed Intervenors seek to protect in this litigation; instead, as discussed above, Proposed Intervenors move to intervene to ensure that their resources are not improperly diverted, the electoral prospects of the Democratic Party are not harmed, and their members' ability to vote is not curtailed. Accordingly, this is a case where "the government's representation of the public interest [is not] 'identical to the individual parochial interest' of a particular group," even though "both entities occupy the same posture in the litigation." *Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 899 (9th Cir. 2011) (quoting *WildEarth Guardians v. U.S. Forest Serv.*, 573 F.3d 992, 996 (10th Cir. 2009)); *accord Nw. Envtl. Advocates v. U.S. Dep't of Commerce*, 769 F. App'x 511, 512 (9th Cir. 2019). The governmental presumption thus does not apply.[6]

Second, and relatedly, Defendants and Proposed Intervenors do not "share the same ultimate objective." *Citizens for Balanced Use*, 647 F.3d at 898. Defendants' ultimate objective is

---

motion." *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 819 (9th Cir. 2001).

[6] Indeed, the governmental Defendants would "shirk [their] duty were [they] to advance the narrower interest of a private entity." *Nat'l Parks Conservation Ass'n v. EPA*, 759 F.3d 969, 977 (8th Cir. 2014) (quoting *Conservation Law Found. of New Eng., Inc. v. Mosbacher*, 966 F.2d 39, 44 (1st Cir. 1992)).

ensuring that California's election laws are properly administered and enforced. Proposed Intervenors' ultimate objectives are the promotion of the Democratic Party and ensuring that each of its members has an opportunity to cast a ballot. While Proposed Intervenors seek "to advance their own interests in achieving the greatest possible participation in the political process" through voter mobilization, governmental entities like Defendants must "consider the overall fairness of the election system to be employed in the future, the expense of litigation to defend the existing system, and the social and political divisiveness of the election issue." *Meek v. Metropolitan Dade County*, 985 F.2d 1471, 1478 (11th Cir. 1993), *abrogated on other grounds by Dillard v. Chilton Cty. Comm'n*, 495 F.3d 1324 (11th Cir. 2007). Accordingly, Proposed Intervenors and Defendants do *not* share identical objectives, and so any presumption of adequate representation—and the requirement for a compelling showing—is rebutted. *See Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 823 (9th Cir. 2001) ("[E]ven if the presumption applies, it is rebutted here because Applicants and Defendants do not have sufficiently congruent interests."); *Nichols*, 275 F.R.D. at 308 (finding inadequate representation where defendant state agency and proposed intervenor "may share the same 'ultimate objective,' . . . [but] the parties' interests are neither 'identical' nor 'the same.'" (quoting *Berg*, 268 F.3d at 823)).

Because Proposed Intervenors and Defendants possess divergent interests in this litigation, Proposed Intervenors cannot assume that Defendants "will undoubtedly make all of" their arguments, *Arakaki*, 324 F.3d at 1086, and so Rule 24(a)(2)'s fourth requirement is satisfied. *See Paher*, 2020 WL 2042365, at *3 (concluding that "Proposed Intervenors . . . have demonstrated entitlement to intervene as a matter of right" where they "may present arguments about the need to safeguard [the] right to vote that are distinct from Defendants' arguments"); *Associated Gen. Contractors of Am. v. Cal. Dep't of Transp.*, No. 09-01622, 2009 WL 5206722, at *2–3 (E.D. Cal. Dec. 23, 2009) (granting intervention where defendant state agency and proposed intervenors would advocate on behalf of different interests).

**III.    Proposed Intervenors satisfy the requirements for permissive intervention under Rule 24(b).**

Additionally and alternatively, Proposed Intervenors satisfy the requirements for permissive intervention. *See* Mot. at 8–9.

Plaintiffs suggest that Proposed Intervenors "have failed to identify a common question of law and fact with the existing parties." Opp. at 7. This is not so. As demonstrated by their proposed answer, *see* Mot., Ex. 1, Proposed Intervenors have identified common legal questions implicated by this litigation—for example, whether Defendants' Eleventh Amendment immunity precludes this action, and whether Defendants' actions are permissible under California law. Moreover, Proposed Intervenors maintain that they are particularly well-positioned to address a crucial question of fact on which Plaintiffs' suit is premised—the erroneous contention that expanded opportunities for mail voting will lead to an increase in voter fraud. Given that Proposed Intervenor DCCC has litigated against this baseless allegation of voter fraud in other forums, *see, e.g.*, Motion to Intervene as Defendants, *Paher v. Cegavske*, No. 3:20-cv-00243-MMD-WGC (D. Nev. Apr. 27, 2020), it will, contrary to Plaintiffs' assertion, "add [something]"—namely, a valuable perspective and factual expertise—"to the litigation." Opp. at 8.

Plaintiffs conclude that "[e]ven if the criteria for permissive intervention were met," the Court should exercise its discretion to deny intervention. *Id.* at 7–8. But the reasons they cite actually demonstrate why intervention would be beneficial in this case. As discussed in Part II *supra*, Proposed Intervenors' interests are *not* "adequately represented by the government defendants." Opp. at 7. And intervention would not lead to "inevitable inefficiency" and "delay and expense." *Id.* at 8. Quite the contrary, as discussed in their motion, "Proposed Intervenors have an undeniable interest in a swift resolution of this action, to ensure that Defendants have sufficient time to allow every California voter to cast a ballot in the Election." Mot. at 9. Moreover, the Court has already determined that this litigation is sufficiently related to *Republican National Committee v. Newsom*, No. 2:20-cv-01055-MCE-CKD (E.D. Cal.), to justify a combined briefing and hearing schedule. *See* ECF No. 11. Plaintiffs in that related case have indicated that they do not oppose

Proposed Intervenors' intervention, and so Proposed Intervenors will be a part of this combined litigation in any event. Accordingly, any delay or inefficiency that could result from intervention—and none would—is not a sound basis for denying permissive intervention in this action.[7]

In short, contrary to Plaintiffs' conclusion, permissive intervention in this case is both warranted (given the unique perspective Proposed Intervenors would bring to the litigation) and necessary (to ensure that their distinct interests are adequately protected).

## CONCLUSION

For these reasons, along with those stated in their motion, Proposed Intervenors respectfully request that the Court grant their motion to intervene as of right under Rule 24(a)(2) or, in the alternative, permit them to intervene under Rule 24(b).

DATED this 8th day of June, 2020

**PERKINS COIE LLP**

By:   *s/ Jonathan P. Hawley*
Jonathan P. Hawley, Esq.
Abha Khanna, Esq.*
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099

Marc E. Elias, Esq.*
Henry J. Brewster, Esq.*
Courtney A. Elgart, Esq.*
700 Thirteenth Street NW, Suite 800
Washington, D.C. 20005-3960

*Attorneys for Proposed Intervenor-Defendants
DCCC and California Democratic Party*

*Pro hac vice applications pending

---

[7] Even if delay were likely, Plaintiffs have failed to demonstrate how intervention would "*unduly* delay" the proceedings, which is the proper consideration under Rule 24(b). Fed. R. Civ. P. 24(b)(3) (emphasis added); *see also Appleton v. Comm'r*, 430 F. App'x 135, 138 (3d Cir. 2011) ("[A]ny introduction of an intervener in a case will necessitate its being permitted to actively participate, which will inevitably cause some 'delay.' 'Undue' means not normal or appropriate.").

1

<u>**CERTIFICATE OF SERVICE**</u>

2

      I hereby certify that on this 8th day of June, 2020 a true and correct copy of the foregoing

3

Reply in Support of Motion to Intervene as Defendants was served via the United States District

4

Court's CM/ECF system on all parties or persons requiring notice.

5

6

              By:   *s/Vanessa Salinas*

7

                        Vanessa Salinas
                        Legal Assistant

8

                        **PERKINS COIE LLP**

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CERTIFICATE OF SERVICE—PAGE 1