# PUBLIC INTEREST
## — LEGAL FOUNDATION —

*VIA FACSIMILE and USPS*                                              June 9, 2020

**The Hon. Alex Padilla**
**California Secretary of State**
Elections Division
1500 11th Street, 5th Floor
Sacramento, CA 95814
Fax: (916) 653-3214

      Re:      Voter List Maintenance Leads
                  Request for Meeting

Dear Secretary Padilla:

Our organization—the Public Interest Legal Foundation—is a non-partisan, 501(c)(3) public-interest organization that is dedicated entirely to promoting the integrity of elections nationwide through research, education, remedial programs, and litigation. As part of our mission, we study, audit, and analyze voter rolls throughout the country to assess their health and accuracy. We compare voter roll data against federal and other public or commercial databases to flag registrations that may be incomplete, outdated, or no longer valid. We then submit findings and leads to proper election officials for further investigation and confirmation to better aid voter roll maintenance programs.

We write today to offer you our findings for the State of California.

**<u>Summary of Findings and Methodology</u>**

    1.  **Potentially Deceased Registrants with an Active Registration.**

In December 2019, we received a copy of the California voter registration extract from your offices. The "active" portion of the extract was compared against the U.S. Social Security Death Index (SSDI), a database made available via the U.S. Social Security Administration. Where possible, voter registration entries were compared against the SSDI *and* printed obituaries and other public notices.

Our analysis showed there were potentially more than **<u>23,000 deceased individuals</u>** with an active registration in the State of California at that time. Approximately 95 percent of the entries matched against the SSDI listed a date of death prior to December 2019, the time period when the roll was purchased. Some matches list dates of death in the 1980s, 1990s, and 2000s. For some, voting credits were apparently assigned for federal contests that occurred after respective dates of SSDI-listed deaths with respect to the 2016 and 2018 General Elections. Only your office can conclusively determine whether these document trails reflecting the voting credits shown in the purchased voter extract are accurate.

**Exhibit A**

As you are likely aware, the National Voter Registration Act of 1993 ("NVRA") requires your office to use reasonable efforts to identify and remove registrants who are deceased. 52 U.S.C. § 20507(a)(4)(A). California law provides that "county elections official shall cancel the registration . . . [u]pon the death of the person registered." Cal. Elec. Code § 2201(a)(5). Your office may do the same. Cal. Elec. Code § 2201(b)(3).

We have utilized multiple means to verify these potentially deceased registrants, but ultimately only your office can conclusively determine whether the registrants are indeed deceased and whether voting credits were accurately issued for some registrants in subsequent elections.

### 2. Potential Duplicate Registrations Across State Lines with Voting Credits Apparently Assigned by Election Officials for the 2018 Election.

Using voter roll extracts obtained from other states at the same time as the California purchase, we performed a detailed matching analysis to discern the number of registrants who are potentially registered in more than one state. We then viewed voting history reports to discern the number of registrants who were apparently assigned voting credits in more than one state for the same election.

In California, we identified more than **2,000 potentially duplicated registrations across state lines** with apparent voting credits assigned by election officials in each state for the 2018 General Election. To arrive at this figure, potential matches of full names and dates of birth were filtered through commercial identity-validation services using Social Security data and more. We have utilized multiple means to verify these potentially duplicate registrations but ultimately only your office can conclusively determine whether these registrations are indeed duplications with genuine document trails reflecting the voting credits shown in the purchased voter extract.

### 3. Potential Intercounty and Intracounty Duplicates with Apparent Voting Credits Assigned for 2016 and 2018 General Elections.

Using a similar methodology, we also flagged registrations that are potentially duplicated within the same California county (intracounty) and across county lines (intercounty). We then reviewed assigned voting credits for each such registration. For the 2016 General Election, more than 280 potential intercounty duplicates were apparently assigned voting credits, and more than 900 potential intracounty duplicates were apparently assigned voting credits. For the 2018 General Election, 625 potential intracounty duplicates were apparently assigned voting credits.

We have utilized multiple means to verify these potentially duplicate registrations but ultimately only your office can conclusively determine whether these registrations are indeed duplications with genuine document trails reflecting the voting credits shown in the purchased voter extract.

### 4. Registrations Indicating 105-Years-of-Age or Older.

We also identified more than **12,200 registrations** listing a year of birth occurring 105 or more years ago. While there is nothing inherently suspect about these registrations, we flag them so election officials can periodically and easily match them against death records to determine

**Exhibit A**

whether they were overlooked during the initial process used to identify deceased registrants, or if separate evidence held within your offices can correct potential recordkeeping errors to the actual dates of birth.

A total of **106** registrations list a year of birth in the 1800s, with the oldest in **1850**. We believe your office would benefit from reviewing and confirming these registrations so that appropriate corrections or updates can be made, if necessary.

    **5. Registrations Using Placeholder Data, Missing Data, or Likely Incorrect Data.**

We also identified **more than 9,600 registrations** that potentially list fictitious or intentionally incorrect dates of birth. These registrations commonly list either "1800," "1850," and "1900" for the registrant's year of birth.

**Request for Meeting**

We would like to offer our findings to you for further investigation and confirmation. We are available via telephone or videoconference, if needed, to discuss our research and how we can best transfer the data to you. Please let us know which date(s) and time(s) you prefer.

Should you need to contact us regarding this matter, please contact me at lchurchwell@publicinterestlegal.org. Thank you for your service on this matter.

Sincerely,

Logan Churchwell
Communications & Research Director
Public Interest Legal Foundation
lchurchwell@publicinterestlegal.org

**Exhibit A**