Robert Patrick Sticht (SBN 138586)
T. Russell Nobile*
Robert Popper*
Eric Lee (SBN 327002)
Judicial Watch, Inc.
425 Third Street SW, Suite 800
Washington, D.C. 20024
(202) 646-5172
(202) 646-5199 (fax)
Rsticht@judicialwatch.org
Rnobile@judicialwatch.org
Rpopper@judicialwatch.org
Elee@judicialwatch.org

*Admitted Pro Hac Vice

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Darrell Issa, et al,<br><br>　　　　Plaintiffs,<br><br>v.<br><br>Gavin Newsom, et al.,<br><br>　　　　Defendants. | Case No. 2:20-cv-01044-MCE-CKD<br><br>**PLAINTIFFS' OPPOSITION TO CALIFORNIA COMMON CAUSE'S, LEAGUE OF WOMEN VOTERS OF CALIFORNIA'S, AND COMMUNITY COALITION'S MOTION TO INTERVENE** |

Plaintiffs Darrell Issa, James B. Oerding, Jerry Griffin, Michelle Bolotin, and Michael Sienkiewicz ("Plaintiffs") submit this opposition to the Motion to Intervene (ECF No. 33) filed by California Common Cause, League of Women Voters of California, and Community Coalition ("Movants").

## BACKGROUND

There are two procedures in California for mail-based voting with some voters being able to use one or both depending on whether their respective county has opted for all-mailed ballot elections under California's Voter's Choice Act ("VCA"). *See* S.B. 450, 2015-2016 Reg. Sess. (Cal. 2016) (enacting the VCA). Non-VCA counties operate under

California's "vote-by-mail" procedures, which are the State's procedure for traditional absentee voting. *See* Cal. Elec. Code §§ 3000-3026. California is a "no-excuse absentee ballot" state. Cal. Elec. Code § 3003. The VCA provides that counties may conduct all-mailed ballot elections if they choose to do so and if they meet certain specified conditions. Cal. Elec. Code § 4005.

On March 4, 2020, Governor Gavin Newsom declared a state of emergency in California, citing the threat posed by the COVID-19 pandemic. On May 8, 2020, relying on his emergency powers, Governor Newsom issued Executive Order N-64-20 ("EO N-64-20" or "Executive Order"). It provided that "[n]otwithstanding any limitation on the distribution of vote-by-mail ballots" in the VCA or in any other California law, "county elections officials shall transmit vote-by-mail ballots for the November 3, 2020 General Election to all voters who are . . . registered to vote in that election." (ECF No. 1-2 at 3, ¶ 1.)

Plaintiffs in this action are a California congressional candidate and four California voters from across the political spectrum. The complaint alleges that Governor Newsom's executive order is an "unlawful attempt to supersede and replace California election law, including the VCA, by imposing an entirely new" electoral system. (ECF No. 1-2 at 3, ¶ 1.) It alleges that the executive order violates the Elections Clause, the Electors Clause, and the Due Process Clause of the Constitution and is *ultra vires* under state law. (*Id.*, Counts I-IV.) The Court ordered that Plaintiffs' motion for preliminary relief be filed no later than June 11, 2020. (ECF No. 11.) Pursuant to that order, Plaintiffs moved for a preliminary injunction on only counts I and II of the complaint, regarding whether the Executive Order violates the Elections Clause and the Electors Clause.[1] A hearing on the preliminary relief sought in this case and the related case brought by the Republican National Committee is set for July 16, 2020. *See Republican Nat'l Comm., et al., v. Newsom, et al.,* Civ. No. 2:20-

---

[1] Given the Court's order, preliminary relief based on the other counts in the complaint, which were not raised in the motion for preliminary relief, are presumably unavailable going forward. Accordingly, the main question before the Court is whether does the Executive Order violates the Elections Clause or the Electors Clauses. *See* Fed. R. Civ. P. 24(b)(1)(B).

cv-01055-MCE-CKD ("RNC Case").

On June 10, 2020, the Court granted the motion of the Democratic Congressional Campaign Committee (DCCC) and the Democratic Party of California to intervene as defendants under Fed. R. Civ. P. 24. (ECF No. 31.) Hours later, Movants filed the instant motion to intervene permissively as defendants under Fed. R. Civ. P. 24(b)(1)(b).

Since then, additional third parties have sought to intervene as defendants. On Friday, June 12, 2020, the Public Interest Law Foundation ("PILF") filed a Motion for Leave to File Amicus. (ECF No. 39.) That same day, League of United Latin American Citizens and California League of United Latin American Citizens filed their own motion to intervene as defendants under Rule 24(b). [2] (ECF No. 40.) Both of these new motions are still pending and a separate response will be filed, as needed.

There are now five parties seeking to intervene as defendants in the instant case. If all are allowed to intervene, there will be a total of seven intervening defendants.[3] Given the large number of political organizations in California, more third-party involvement can be reasonably expected.

As set forth below, Movants failed to establish the criteria necessary for intervention.

**ARGUMENT**

**I.  THE COURT SHOULD DENY MOVANTS' REQUEST FOR PERMISSIVE INTERVENTION.**

"An applicant who seeks permissive intervention must prove that it meets three threshold requirements: (1) it shares a common question of law or fact with the main action; (2) its motion is timely; and (3) the court has an independent basis for jurisdiction over the applicant's claims." *Donnelly v. Glickman*, 159 F.3d 405,412 (9th Cir. 1998) (citation

---

[2]  In their filing, LULAC represented that they and the Movants had agreed "to file joint briefing hereinafter." (ECF 41 at 2, fn1.). Assuming this is true, Plaintiffs consent to amicus briefs under Fed. R. Civ. P. 29 filed by either Movants or LULAC.

[3]  There are even more prospective intervenors in the RNC Case after the California League of Conservation Voters and California League of Conservation Voters Education Fund filed to intervene as defendants late Friday evening. *See* ECF No. 48 in the RNC Case.

omitted); *see* Fed. R. Civ. P. 24(b).  Yet "[e]ven if an applicant satisfies those threshold requirements, the district court has discretion to deny permissive intervention." *Donnelly*, 159 F.3d at 412 (citations omitted).  "In exercising its discretion, the district court must consider whether intervention will unduly delay the main action or will unfairly prejudice the existing parties." *Id.*, citing, *inter alia*, Fed. R. Civ. P. 24(b)(2).

The permissive intervention Movants seek is only available where an applicant demonstrates "a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(2).  If the asserted claim or defense "contains no question of law or fact that is also raised by the main action, intervention under Rule 24(b)(2) must be denied." *Kootenai Tribe of Idaho v. Veneman*, 313 F.3d 1094, 1111 (9th Cir. 2002), *abrogated on other grounds by Wilderness Soc. v. U.S. Forest Service*, 630 F.3d 1173 (9th Cir. 2011); *see also Fair Political Practices Comm'n v. U.S. Postal Serv.*, Case No. 2:12-CV-93-GEB, 2012 U.S. Dist. LEXIS 58759, at *11 (E.D. Cal. Apr. 26, 2012).  Only if there is a common question concerning a claim or defense is the Court vested with discretion to consider permissive intervention.  *Kootenai Tribe*, 313 F.3d at 1111.  Even where the Movant has met these requirements, the Court may "consider other factors in the exercise of its discretion, including 'the nature and extent of the intervenors' interest' and 'whether the intervenors' interests are adequately represented by other parties.'"  *Perry v. Proposition 8 Official Proponents*, 587 F.3d 947, 955 (9th Cir. 2009) (citation omitted).

### A. Timeliness

Plaintiffs concede that the motion is timely.  However, the prejudice that results from a delay in seeking leave is separate and distinct from the prejudice that will result in the admission of additional parties under permissive intervention.  *See* 6 MOORE'S FEDERAL PRACTICE § 24.21(3) (noting the different analysis between prejudice for timeliness and prejudice for permissive intervention).  As discussed below, the addition of more Defendants is reasonably likely to delay resolution at the trial level and any subsequent appeal.

### B. Movants Have Not Stated a Claim or Defense That Shares With the Main Action a Common Question of Law or Fact.

Movants contend that they seek to "assert defenses against Plaintiffs' claims that the State's voting system is unconstitutional" and related to the requested relief. (ECF No. 33 at 14-15.) Movants claim they will "contribute to the Court's resolution of the [certain] questions of law and fact, all of which are common to the main actions," which they attempt to list. (ECF No. 33 at 14-15.) Yet, none of the points listed satisfy the requirement that Movants have "a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). Movants merely signal certain areas they intend to dispute and refer the Plaintiffs and the Court to their proposed answer. (ECF 33 at 15.) But Movants never filed an answer that "sets out the claim or defense for which intervention is sought" leaving the Court to guess, and seriously prejudicing Plaintiffs' ability to respond. FED. R. CIV. P. 24(c). Instead, Movant filed an answer where the factual allegations seem to match those in the RNC's complaint, not the complaint in this action. (ECF 33-1). Plaintiffs can only speculate as to the claim or defense that it shares with the main action.

The areas that Movants do list in their Brief, however, mostly involve considerations of whether this Court should grant preliminary relief, which in no way can be considered "a claim or defense that shares with the main action a common question of law or fact." Movants may disagree that Plaintiffs can satisfy their burden to show preliminary relief is in the "public interest" or about whether the burden is adequately balanced to justify preliminary relief. (ECF 33 at 15.) But those are clearly not "claims or defenses" held by the Movants.[4] The main action is not whether Plaintiffs can carry their burden to obtain preliminary relief, but rather whether EO N-64-20 is a legislative enactment under the Elections Clause and Electors Clause. Nothing the Movants cite constitute "a claim or defense that shares with the main action a common question of law or fact."

---

[4] Similarly, Movants claim that they intend to dispute whether the Governor's working with other state agencies "violates the Equal Protection Clause" or whether "voting by mail is per se unconstitutional." Neither of these are in the "main action" in these proceedings.

*Plaintiffs' Opposition*
*to Motion to Intervene*

Alternatively, Movants' brief suggests that they believe the State's existing vote-by-mail procedure and the VCA, both of which Plaintiffs ask this Court to enforce, violate Section 2 of the Voting Rights Act, 52 U.S.C. § §10301, or possibly some other race-based protection under federal law.  While their brief hints at such claims, they never affirmatively allege this counter or cross claim. *See* ECF No. 33 at 9 ("Requesting a mail-in ballot [under existing California law] is unsurmountable burden for voters with low literacy, limited language skills, and those with significant work and care responsibilities.")  The action pending before the Court does not involve race-based protections, nor any claim under the Voting Rights Act.  Movants do not elaborate further and without a proper answer the Court and Plaintiffs must guess.

### C. The Independent Basis for Jurisdiction Over Movants' Claims or Defenses

For the same reason they cannot respond to "a claim or defense that shares with the main action a common question of law or fact," Plaintiffs cannot address whether the Court has independent jurisdiction over Movants' claims or defenses.  Movants acknowledge that they do not "intend to bring new state law counterclaims or cross-claims."  (ECF 33 at 15).  But without knowing what "claim or defense" Movants have, it is difficult to address whether the Court has jurisdiction.

## II. THE COURT SHOULD DECLINE TO EXERCISE ITS DISCRETION TO GRANT PERMISSIVE INTERVENTION.

Even if the criteria for permissive intervention were met, the Court has discretion to deny Movants' application. *Donnelly*, 159 F.3d at 412 (citations omitted).  In exercising such discretion, the Court would be required to "consider whether intervention will unduly delay the main action or will unfairly prejudice the existing parties." *Id*. (citations omitted); FED. R. CIV. P. 24(b)(3).  The Court "may also consider other factors in the exercise of its discretion, including 'the nature and extent of the intervenors' interest' and 'whether the intervenors' interests are adequately represented by other parties.'" *Perry*, 587 F.3d at 955, citing *Spangler v. Pasadena City Bd. of Educ.*, 552 F.2d 1326, 1329 (9th Cir. 1977); *California v. Tahoe Reg'l Planning Agency*, 792 F.2d 775, 779 (9th Cir. 1986) (affirming district court's

conclusion that intervention by those with interests adequately represented "would be redundant and would impair the efficiency of the litigation."); *see Hoots v. Pennsylvania*, 672 F.2d 1133, 1136 (3d Cir. 1982) (where "representation is deemed adequate, the district court is well within its discretion in deciding that the applicant's contributions to the proceedings would be superfluous and that any resulting delay would be 'undue.'").

**A. Movants' Interests Are Already Adequately Represented.**

The Ninth Circuit considers three factors in determining the adequacy of representation: (1) whether the interest of a present party is such that it will undoubtedly make all of a proposed intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether a proposed intervenor would offer any necessary elements to the proceeding that other parties would neglect. *Tahoe Reg'l Planning Agency*, 792 F.2d at 778 (citations omitted). In other types of cases, proposed intervenors are faced with a "minimal" burden to show inadequacy, and it is enough to show that representation "may be" inadequate. *Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003) (citation omitted).

Here, though, this standard gives way to a presumption of adequacy of representation in two circumstances. First, "[w]hen an applicant for intervention and an existing party have the same ultimate objective, a presumption of adequacy of representation arises." *Arakaki*, 324 F.3d at 1086. (citation omitted). Furthermore, "[i]f the applicant's interest is identical to that of one of the present parties, a compelling showing should be required to demonstrate inadequate representation." *Id.* (citation omitted). "Where parties share the same ultimate objective, differences in litigation strategy do not normally justify intervention." *Id.* (citation omitted).

Second, there is an "assumption of adequacy when the government is acting on behalf of a constituency that it represents." *Prete v. v. Bradbury*, 438 F.3d 949, 956 (9th Cir. 2006). Furthermore, "[i]n the absence of a 'very compelling showing to the contrary,' it will be presumed that a state adequately represents its citizens when the applicant shares the

*Plaintiffs' Opposition
to Motion to Intervene*

same interest." *Arakaki*, 324 F.3d at 1086 (citing 7C Wright, Miller & Kane, § 1909, at 332); *see Pest Comm. v. Miller*, 648 F. Supp. 2d 1202, 1213-14 (D. Nev. 2009) (applying heightened standard where the Nevada Secretary of State and the intervenors shared the same interest).

Movants' argument regarding how their interests are not already adequately represented by State Defendants and Intervening-Defendants falls woefully short. (ECF 33 at 16-17.) Movants contend that they represent a "broad constituency," which makes them "well positioned to assist this court's comprehension of the facts and applicable law." *Id*. at 16. Yet, the best they can claim is that their interests are not "fully represented by the other parties." *Id*. But "full[] representation" is not the same as "adequate representation," which is the applicable legal standard. Moreover, Movants never explain what exactly they mean by the assertion that their "interests" are not "fully represented." Are some of their interests (adequately) represented, but not others? If so, which interests – or parts thereof – are not adequately represented? One cannot know, based on the Movants' briefing.

Here, Movants agree that Governor Newsom has taken the steps their organizations desire to implement statewide all-mailed voting and "protect the health of Californians while preserving the opportunity to vote." (ECF No. 33 at 8.) The named defendants here, moreover, are the Governor and the Secretary of State. In California, the Secretary of State in particular "is the chief elections officer of the state," responsible for "administer[ing] the provisions of the Elections Code" and for "see[ing] that . . . state election laws are enforced." Cal. Gov't Code § 12172.5(a). Therefore, Movants have the same ultimate objective as state officials charged by law with administering and enforcing the voting laws. They must make a "very compelling showing" that they are not adequately represented by the existing Defendants. Movants do not come close to meeting that standard.[5]

---

[5] Plaintiffs note that Movants agree with Defendants in more than a formal or presumptive sense. Movant California Common Cause has publicly recognized Secretary Padilla for his voting rights advocacy. In December 2017, Common Cause honored Secretary Padilla with its "Champion of Democracy" award. Common Cause's executive director, who submitted a declaration in support of the instant motion, praised Secretary Padilla for

Movants do hint at – but never say how – their interests may be "in some respects adverse" to the State's interests. (ECF 33 at 16.) They recognize that the State too represents a broad constituency of "all voters," which necessarily includes their members, but argue their organizations should be admitted as parties because they are "differently situated" than the State. Again, they never say *how* their interests are not represented by the State. Movants are relying on rhetoric rather than substance; they never say how their "differently situated" and "in some respects adverse" interests actually diverge, in practice, from those of Defendants and Intervenor-Defendants. They never identify a material argument that Defendants will not make, or refer to a contention Defendants are likely to, make that is contrary to Movants' interests. Movants' vague speculation "falls far short of a 'very compelling showing.'" *Dep't of Fair Employment and Housing v. Lucent Tech.*, Inc., 642 F.3d 728, 740-41 (9th Cir. 2011) (citations omitted); *League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1307 (9th Cir. 1997).

Movants must be presumed to be adequately represented by the government defendants, and their intervention is not necessary. Accordingly, their motion should be denied.

**B. Movants Fail to Show How Intervention in Other Voting Cases Warrants Their Intervention Here.**

Movants claim that *Meek v. Metro. Dade Cty.*, 985 F.2d 1471 (11th Cir. 1993) and *Miller v. Blackwell*, 348 F. Supp. 2d 916 (S.D. Ohio 2004) show that voter organizations have

---

advancing "bold policies to modernize elections and eliminate unnecessary burdens on Californians' right to vote," calling him and his staff "a breath of fresh air—and urgency—to expanding our democracy." *Press Release: Common Cause Honors Secretary of State Alex Padilla*, CALIFORNIA COMMON CAUSE, Dec. 1, 2017, available at https://www.commoncause.org/california/press-release/2208/; *Press Release: Secretary of State Alex Padilla to be Honored as Common Cause's "Champion of Democracy,"* California Secretary of State, Nov. 30, 2017, available at https://www.sos.ca.gov/administration/news-releases-and-advisories/2017-news-releases-and-advisories/secretary-state-alex-padilla-be-honored-common-causes-champion-democracy/. Further, now that the DCCC and the California Democratic Party have successfully intervened, Movants must also explain how *these* groups will not adequately represent them. Movants wholly fail to address the interests represented by the intervenors, whose motion was pending for over a week prior to the Movants' filing.

been admitted in "closely analogous circumstances." (ECF No. 33 at 17.)  The cases cited by Movants do not stand for the points they are trying to make.  Movants' repeated efforts to recast Plaintiffs' claims into something they are not does not transform cases involving entirely different federal statutes and entirely different facts into "closely analogous circumstances."  Voting cases are not fungible, and these cases are not analogous.  The fact that Movants contend these cases are "closely analogous" just raises further questions about how they could assist the Court in resolving the *actual questions* before the Court during the preliminary relief stage.

First, *Meek v. Metro. Dade Cty.*, 985 F.2d 1471, 1478 (11th Cir. 1993) involved post-judgment intervention in a proceeding involving an entirely different federal claim.  *Meek* is one of several rulings related to a 1990's *race-based* challenge to Dade County's at-large system for electing its county commission.  *Id.* at 1476. (ECF 33 at 17).  There, the Eleventh Circuit ruled the trial court should have allowed minority voters to intervene during the *post-judgment* stage after the trial ruled the electoral scheme violated minority protections under Section 2 of the Voting Rights Act, 52 U.S.C. § §10301.  *Id.* at 1542.  The court ruled that the existing county commissioners, who were elected under the old, illicit electoral regime, did not adequately represent intervening minority voters.  Unlike *Meek*, the Movants here have not yet explained how the Defendants and other Intervenors failed to adequately represent their interests.  Moreover, the risks that the politicians in *Meek*, motivated by electoral self-preservation, may not have represented minority interests during the remedy stage of that litigation (when the court was devising a new electoral scheme for their offices) is not "closely analogous."  Movants have not pointed to anything in the record or public statements by existing Defendants to support their claim that Movants' interests diverge from Defendants.

*Miller v. Blackwell*, 348 F. Supp. 2d 916 (S.D. Ohio 2004) is also utterly unhelpful.  There, the Ohio Democratic Party and others sued under the National Voter Registration Act ("NVRA") and the Due Process Clause of the Constitution to enjoin administrative

proceedings related to voter registration challenges. *Id.* at 923. There the court ruled that the parties initiating the registration challenges could intervene by right. *Id.* The instant proceedings do not involve challenges to voter registrations and there is no NVRA claim.

Plaintiffs note that they did cite California's twenty-year history of violating the NVRA list maintenance provisions in their Memorandum of Law in Support of Preliminary Relief. (ECF 38-1.) However, that was only to illustrate why the Governor's unilateral decision to mandate a new statewide election regime poses a risk to the credibility of California's elections. The threat from inflated voter registration lists is much less severe where a vote-by-mail regime requires voters to initiate a request for a mail-in ballot. Governor Newsom's Executive Order eliminates that critical protection. Mandating that the State mail out live ballots, *en masse*, means the credibility of California's November 2020 election depends on the accuracy of its voter registration lists, which are already suspect.

### C. Movants Do Not Address How They Will Assist the Court in Resolving the Main Question Raised At the Preliminary Relief Stage: Does EO N-64-20 Violate The Elections Clause or The Electors Clause?

The entirety of Movants' arguments consists of constructing strawmen based on false assumptions about Plaintiffs' motives, which Movants will presumably burn later if they are allowed to intervene. Movants commit large parts of their argument to outlandish characterizations of Plaintiffs' claims. Many of these arguments are made without citation to the record and, in the few instances in which there are, the citations do not support the Movants' arguments. Movants' vehemence and misfires would be easier to ignore if they had at least attempted to address how they will assist the Court in resolving the legal question of whether the Executive Order violates the Elections Clause and the Electors Clause. Instead, Movants hope the Court will look past their failure to meet their burden if they string together enough baseless, inflammatory remarks such as the *ad hominem* attack claiming that Plaintiff Issa "disenfranchisement may be precisely the point." (ECF 33 at 11.)

Movants repeatedly, and falsely, claim that Plaintiffs are challenging the constitutionality of vote-by-mail or all-mailed ballots. They raise superficial arguments that "Plaintiffs'

arguments are especially misguided and dangerous because they lead to the unavoidable implication that voting by mail is per se unconstitutional[,]" and that such "implication[] could resonate long after this election[.]"  (ECF 33 at 11.)  Unless Governor Newsom intends to modify EO N-64-20 into a permanent emergency measure, that is not a legitimate risk.  Movants claim that they "intend to contribute to the Court's resolution" of "[w]hether a voting system that allows for voting by mail is per se unconstitutional." (*Id.* at 15.)  Yet, none of that is at issue in this case.

The thrust of the constitutional challenge is clear to all involved except the Movants.  If Movants are unable or unwilling to recognize the difference between Plaintiffs' claims here and a "per se unconstitutional challenge" to vote-by-mail, then it is difficult to see how they will assist the Court in resolving the main action pending.  Moreover, if Plaintiffs, as Movants contend, were challenging the "per se" constitutionality of vote-by-mail or California's Voters Choice Act, it would be clear to parties and the Court.  Instead, the record shows that Plaintiffs alleged narrow claims addressing the uniquely unconstitutional action by the Governor, and they seek even narrower relief.  No other governor has unilaterally imposed all-mailed ballots by executive fiat.  By repeatedly characterizing EO N-64-20 as the "State's voting system," Movants hope this Court will ignore that the Governor – not the Legislature, as required by the Constitution – seeks to impose a new voting system.  Movants have not illustrated how they will assist the Court to resolve that question.

As a practical matter, the existing parties will suffer undue prejudice if the intervention motion is granted.  The case would expand from three defendants to five, with additional defendants likely.  The inevitable inefficiency that would accompany such an expansion necessarily entails a degree of delay and expense.  The Rules "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding."  FED. R. CIV. P. 1.  Denial of permissive intervention has been upheld where movant would not contribute to the underlying factual issues and would only emphasis one party's positions. *Exec. Risk Specialty Ins. Co. v. Rutter*

*Hobbs & Davidoff, Inc.*, 564 F. App'x 887, 889 (9th Cir. 2014).

This is especially problematic here, where the nature and context of the dispute mandate a compressed schedule, as the Court's *sua sponte* orders reflect. The more parties involved, the more difficult it will be to coordinate and facilitate the resolution of these proceedings including, if needed, any appellate proceedings. *Perry*, 587 F.3d at 955 (affirming finding of delay where district court found that, if intervention were allowed, "each group would need to conduct discovery on substantially similar issues"); *see also Beraha v. Nevada*, 2019 U.S. Dist. LEXIS 91864, at *9 (D. Nev. May 8, 2019) (finding prejudice where the inclusion of a substantial number of additional parties "would 'necessitate the consideration of extraneous legal and factual issues that [plaintiff's] lawsuit would not otherwise invoke.'") (quoting *UMG Recordings, Inc. v. Bertelsmann AG*, 222 F.R.D. 408, 414 (N.D. Cal. 2004)).

In sum, Movants have not demonstrated that they should be permitted to intervene. Accordingly, their Motion should be denied.

## CONCLUSION

For the foregoing reasons, the Court should deny the pending motion to intervene permissively.

|  |  |
|---|---|
|  | Respectfully submitted, |
| June 15, 2020 | JUDICIAL WATCH, INC. |
| By: | *s/ Russell Nobile* <br> Robert Patrick Sticht (SBN 138586) <br> T. Russell Nobile* <br> Robert Popper* <br> Eric Lee (SBN 327002) <br> JUDICIAL WATCH, INC. <br> 425 Third Street SW, Suite 800 <br> Washington, D.C. 20024 <br> (202) 646-5172 <br> (202) 646-5199 (fax) <br> Rsticht@judicialwatch.org <br> Rnobile@judicialwatch.org <br> Rpopper@judicialwatch.org <br> Elee@judicialwatch.org |
|  | *Admitted Pro Hac Vice* |
|  | Attorneys for Plaintiffs |