1   XAVIER BECERRA
    Attorney General of California
2   BENJAMIN M. GLICKMAN
    Supervising Deputy Attorney General
3   JAY C. RUSSELL
    Deputy Attorney General
4   JOHN W. KILLEEN, State Bar No. 258395
    Deputy Attorney General
5     1300 I Street, Suite 125
      P.O. Box 944255
6     Sacramento, CA 94244-2550
      Telephone:  (916) 210-6045
7     Fax:  (916) 324-8835
      E-mail:  John.Killeen@doj.ca.gov
8   *Attorneys for Defendants Gavin Newsom*
    *and Alex Padilla*

9

IN THE UNITED STATES DISTRICT COURT

10

FOR THE EASTERN DISTRICT OF CALIFORNIA

11

12

13

| | |
|---|---|
| 14  **DARRELL ISSA, JAMES B. OERDING, JERRY GRIFFIN, MICHELLE BOLOTIN,** | No. 2:20-cv-01044-MCE-CKD |
| 15  **and MICHAEL SIENKIEWICZ,** | |
| 16                          Plaintiffs, | **REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF OPPOSITION TO** |
| 17                  **v.** | **PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION** |
| 18  **GAVIN NEWSOM, in his official capacity** | |
| 19  **as Governor of the State of California, and** | Date:        July 16, 2020 |
|     **ALEX PADILLA, in his official capacity as** | Time:        10:00 a.m. |
| 20  **Secretary of State of California,** | Dept:        Courtroom 7, 14th Floor |
|     | Judge:       The Honorable Morrison C. |
| 21                          Defendants. | England, Jr. |
|     | Trial Date:  None Set |
| 22  | Action Filed:  5/21/2020 |

23

24

25

26

27

28

Defendants Gavin Newsom, in his official capacity as Governor of California, and Alex Padilla, in his official capacity as California Secretary of State hereby request that the Court take judicial notice of the following documents, true and correct copies of which are attached hereto:

| # | EXHIBIT |
|---|---------|
| 1 | March 4, 2020 Proclamation of State of Emergency |
| 2 | March 12, 2020 Executive Order N-25-20 of the Governor of California |
| 3 | March 19, 2020 Executive Order N-33-20 of the Governor of California |
| 4 | May 6, 2020 Letter From Senator Tom Umberg and Assemblyman Marc Berman to Governor Gavin Newsom |
| 5 | May 8, 2020 Executive Order N-64-20 of the Governor of California |
| 6 | California Senate Bill 423 (as of June 24, 2020) |
| 7 | June 3, 2020 Executive Order N-67-20 of the Governor of California |
| 8 | California Assembly Bill 860 (as chaptered June 18, 2020) |
| 9 | Vote Record for California Assembly Bill 860 (obtained from the California Legislature's legislative information website: https://leginfo.legislature.ca.gov/faces/billVotesClient.xhtml?bill_id=201920200AB860 ) (last accessed June 24, 2020) |
| 10 | May 4, 1992 Executive Order W-29-92 of the Governor of California |
| 11 | November 1, 1993 Executive Order W-69-93 of the Governor of California |
| 12 | August 31, 2009 Executive Order S-17-09 of the Governor of California |
| 13 | September 1, 2009 Executive Order S-19-09 of the Governor of California |
| 14 | Executive Order B-43-17 of the Governor of California |

Federal Rule of Evidence 201(b) provides that a judicially noticed fact must be one "not subject to reasonable dispute" because it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot readily be questioned.  Fed. R. Evid. 201(b).

1

1    A federal court may take judicial notice of government documents, including "documents

2 available from reliable sources on the internet." *Best Supplement Guide, LLC v. Newsom*, No.

3 2:20-cv-00965 (E.D. Cal. May 22, 2020), 2020 WL 2615022, *2 (citation omitted) (taking

4 judicial notice of "'a series of order[s] and directives of the Governor and Public Health Officer'

5 that make up the State's stay at home order"); *King v. Cnty. of Los Angeles*, 885 F.3d 548, 555

6 (9th Cir. 2018) ("we take judicial notice of the undisputed and publicly available  information

7 displayed on government websites").

8    The attached documents are government documents whose authenticity is not subject to

9 dispute.  Accordingly, Defendants request that the Court take judicial notice of these materials.

10

11  Dated:  June 25, 2020                          Respectfully Submitted,

12                                                 XAVIER BECERRA
                                                   Attorney General of California
13                                                 BENJAMIN M. GLICKMAN
                                                   Supervising Deputy Attorney General
14                                                 JAY C. RUSSELL
                                                   Deputy Attorney General
15

16

17                                                 */s/ John W. Killeen*
                                                   JOHN W. KILLEEN
18                                                 Deputy Attorney General
                                                   *Attorneys for Defendants Gavin Newsom*
19                                                 *and Alex Padilla*

20  SA2020301341
    34189765.docx
21

22

23

24

25

26

27

28

2

# EXHIBIT 1

EXECUTIVE DEPARTMENT
STATE OF CALIFORNIA

### PROCLAMATION OF A STATE OF EMERGENCY

**WHEREAS** in December 2019, an outbreak of respiratory illness due to a novel coronavirus (a disease now known as COVID-19), was first identified in Wuhan City, Hubei Province, China, and has spread outside of China, impacting more than 75 countries, including the United States; and

**WHEREAS** the State of California has been working in close collaboration with the national Centers for Disease Control and Prevention (CDC), with the United States Health and Human Services Agency, and with local health departments since December 2019 to monitor and plan for the potential spread of COVID-19 to the United States; and

**WHEREAS** on January 23, 2020, the CDC activated its Emergency Response System to provide ongoing support for the response to COVID-19 across the country; and

**WHEREAS** on January 24, 2020, the California Department of Public Health activated its Medical and Health Coordination Center and on March 2, 2020, the Office of Emergency Services activated the State Operations Center to support and guide state and local actions to preserve public health; and

**WHEREAS** the California Department of Public Health has been in regular communication with hospitals, clinics and other health providers and has provided guidance to health facilities and providers regarding COVID-19; and

**WHEREAS** as of March 4, 2020, across the globe, there are more than 94,000 confirmed cases of COVID-19, tragically resulting in more than 3,000 deaths worldwide; and

**WHEREAS** as of March 4, 2020, there are 129 confirmed cases of COVID-19 in the United States, including 53 in California, and more than 9,400 Californians across 49 counties are in home monitoring based on possible travel-based exposure to the virus, and officials expect the number of cases in California, the United States, and worldwide to increase; and

**WHEREAS** for more than a decade California has had a robust pandemic influenza plan, supported local governments in the development of local plans, and required that state and local plans be regularly updated and exercised; and

**WHEREAS** California has a strong federal, state and local public health and health care delivery system that has effectively responded to prior events including the H1N1 influenza virus in 2009, and most recently Ebola; and

**WHEREAS** experts anticipate that while a high percentage of individuals affected by COVID-19 will experience mild flu-like symptoms, some will have more serious symptoms and require hospitalization, particularly individuals who are elderly or already have underlying chronic health conditions; and

**WHEREAS** it is imperative to prepare for and respond to suspected or confirmed COVID-19 cases in California, to implement measures to mitigate the spread of COVID-19, and to prepare to respond to an increasing number of individuals requiring medical care and hospitalization; and

**WHEREAS** if COVID-19 spreads in California at a rate comparable to the rate of spread in other countries, the number of persons requiring medical care may exceed locally available resources, and controlling outbreaks minimizes the risk to the public, maintains the health and safety of the people of California, and limits the spread of infection in our communities and within the healthcare delivery system; and

**WHEREAS** personal protective equipment (PPE) is not necessary for use by the general population but appropriate PPE is one of the most effective ways to preserve and protect California's healthcare workforce at this critical time and to prevent the spread of COVID-19 broadly; and

**WHEREAS** state and local health departments must use all available preventative measures to combat the spread of COVID-19, which will require access to services, personnel, equipment, facilities, and other resources, potentially including resources beyond those currently available, to prepare for and respond to any potential cases and the spread of the virus; and

**WHEREAS** I find that conditions of Government Code section 8558(b), relating to the declaration of a State of Emergency, have been met; and

**WHEREAS** I find that the conditions caused by COVID-19 are likely to require the combined forces of a mutual aid region or regions to appropriately respond; and

**WHEREAS** under the provisions of Government Code section 8625(c), I find that local authority is inadequate to cope with the threat posed by COVID-19; and

**WHEREAS** under the provisions of Government Code section 8571, I find that strict compliance with various statutes and regulations specified in this order would prevent, hinder, or delay appropriate actions to prevent and mitigate the effects of the COVID-19.

**NOW, THEREFORE, I, GAVIN NEWSOM,** Governor of the State of California, in accordance with the authority vested in me by the State Constitution and statutes, including the California Emergency Services Act, and in particular, Government Code section 8625, **HEREBY PROCLAIM A STATE OF EMERGENCY** to exist in California.

**IT IS HEREBY ORDERED THAT:**

1. In preparing for and responding to COVID-19, all agencies of the state government use and employ state personnel, equipment, and facilities or perform any and all activities consistent with the direction of the Office of Emergency Services and the State Emergency Plan, as well as the California Department of Public Health and the Emergency Medical Services Authority. Also, all residents are to heed the advice of emergency officials with regard to this emergency in order to protect their safety.

2. As necessary to assist local governments and for the protection of public health, state agencies shall enter into contracts to arrange for the procurement of materials, goods, and services needed to assist in preparing for, containing, responding to, mitigating the effects of, and recovering from the spread of COVID-19. Applicable provisions of the Government Code and the Public Contract Code, including but not limited to travel, advertising, and competitive bidding requirements, are suspended to the extent necessary to address the effects of COVID-19.

3. Any out-of-state personnel, including, but not limited to, medical personnel, entering California to assist in preparing for, responding to, mitigating the effects of, and recovering from COVID-19 shall be permitted to provide services in the same manner as prescribed in Government Code section 179.5, with respect to licensing and certification. Permission for any such individual rendering service is subject to the approval of the Director of the Emergency Medical Services Authority for medical personnel and the Director of the Office of Emergency Services for non-medical personnel and shall be in effect for a period of time not to exceed the duration of this emergency.

4. The time limitation set forth in Penal Code section 396, subdivision (b), prohibiting price gouging in time of emergency is hereby waived as it relates to emergency supplies and medical supplies. These price gouging protections shall be in effect through September 4, 2020.

5. Any state-owned properties that the Office of Emergency Services determines are suitable for use to assist in preparing for, responding to, mitigating the effects of, or recovering from COVID-19 shall be made available to the Office of Emergency Services for this purpose, notwithstanding any state or local law that would restrict, delay, or otherwise inhibit such use.

6. Any fairgrounds that the Office of Emergency Services determines are suitable to assist in preparing for, responding to, mitigating the effects of, or recovering from COVID-19 shall be made available to the Office of Emergency Services pursuant to the Emergency Services Act, Government Code section 8589. The Office of Emergency Services shall notify the fairgrounds of the intended use and can immediately use the fairgrounds without the fairground board of directors' approval, and

notwithstanding any state or local law that would restrict, delay, or otherwise inhibit such use.

7. The 30-day time period in Health and Safety Code section 101080, within which a local governing authority must renew a local health emergency, is hereby waived for the duration of this statewide emergency. Any such local health emergency will remain in effect until each local governing authority terminates its respective local health emergency.

8. The 60-day time period in Government Code section 8630, within which local government authorities must renew a local emergency, is hereby waived for the duration of this statewide emergency. Any local emergency proclaimed will remain in effect until each local governing authority terminates its respective local emergency.

9. The Office of Emergency Services shall provide assistance to local governments that have demonstrated extraordinary or disproportionate impacts from COVID-19, if appropriate and necessary, under the authority of the California Disaster Assistance Act, Government Code section 8680 et seq., and California Code of Regulations, Title 19, section 2900 et seq.

10. To ensure hospitals and other health facilities are able to adequately treat patients legally isolated as a result of COVID-19, the Director of the California Department of Public Health may waive any of the licensing requirements of Chapter 2 of Division 2 of the Health and Safety Code and accompanying regulations with respect to any hospital or health facility identified in Health and Safety Code section 1250. Any waiver shall include alternative measures that, under the circumstances, will allow the facilities to treat legally isolated patients while protecting public health and safety. Any facilities being granted a waiver shall be established and operated in accordance with the facility's required disaster and mass casualty plan. Any waivers granted pursuant to this paragraph shall be posted on the Department's website.

11. To support consistent practices across California, state departments, in coordination with the Office of Emergency Services, shall provide updated and specific guidance relating to preventing and mitigating COVID-19 to schools, employers, employees, first responders and community care facilities by no later than March 10, 2020.

12. To promptly respond for the protection of public health, state entities are, notwithstanding any other state or local law, authorized to share relevant medical information, limited to the patient's underlying health conditions, age, current condition, date of exposure, and possible contact tracing, as necessary to address the effect of the COVID-19 outbreak with state, local, federal, and nongovernmental partners, with such information to be used for the limited purposes of monitoring, investigation and control, and treatment and coordination of care. The

notification requirement of Civil Code section 1798.24, subdivision (i), is suspended.

13. Notwithstanding Health and Safety Code sections 1797.52 and 1797.218, during the course of this emergency, any EMT-P licensees shall have the authority to transport patients to medical facilities other than acute care hospitals when approved by the California EMS Authority. In order to carry out this order, to the extent that the provisions of Health and Safety Code sections 1797.52 and 1797.218 may prohibit EMT-P licensees from transporting patients to facilities other than acute care hospitals, those statutes are hereby suspended until the termination of this State of Emergency.

14. The Department of Social Services may, to the extent the Department deems necessary to respond to the threat of COVID-19, waive any provisions of the Health and Safety Code or Welfare and Institutions Code, and accompanying regulations, interim licensing standards, or other written policies or procedures with respect to the use, licensing, or approval of facilities or homes within the Department's jurisdiction set forth in the California Community Care Facilities Act (Health and Safety Code section 1500 et seq.), the California Child Day Care Facilities Act (Health and Safety Code section 1596.70 et seq.), and the California Residential Care Facilities for the Elderly Act (Health and Safety Code section 1569 et seq.). Any waivers granted pursuant to this paragraph shall be posted on the Department's website.

   **I FURTHER DIRECT** that as soon as hereafter possible, this proclamation be filed in the Office of the Secretary of State and that widespread publicity and notice be given of this proclamation.

**IN WITNESS WHEREOF** I have hereunto set my hand and caused the Great Seal of the State of California to be affixed this 4th day of March 2020.

GAVIN NEWSOM
Governor of California

ATTEST:

_____

ALEX PADILLA
Secretary of State

# EXHIBIT 2

EXECUTIVE DEPARTMENT
STATE OF CALIFORNIA

**EXECUTIVE ORDER N-25-20**

**WHEREAS** on March 4, 2020, I proclaimed a State of Emergency to exist in California as a result of the threat of COVID-19; and

**WHEREAS** despite sustained efforts, the virus remains a threat, and further efforts to control the spread of the virus to reduce and minimize the risk of infection are needed; and

**WHEREAS** state and local public health officials may, as they deem necessary in the interest of public health, issue guidance limiting or recommending limitations upon attendance at public assemblies, conferences, or other mass events, which could cause the cancellation of such gatherings through no fault or responsibility of the parties involved, thereby constituting a force majeure; and

**WHEREAS** the Department of Public Health is maintaining up-to-date guidance relating to COVID-19, available to the public at http://cdph.ca.gov/covid19; and

**WHEREAS** the State of California and local governments, in collaboration with the Federal government, continue sustained efforts to minimize the spread and mitigate the effects of COVID-19; and

**WHEREAS** there is a need to secure numerous facilities to accommodate quarantine, isolation, or medical treatment of individuals testing positive for or exposed to COVID-19; and

**WHEREAS,** many individuals who have developmental disabilities and receive services through regional centers funded by the Department of Developmental Services also have chronic medical conditions that make them more susceptible to serious symptoms of COVID-19, and it is critical that they continue to receive their services while also protecting their own health and the general public health; and

**WHEREAS** individuals exposed to COVID-19 may be temporarily unable to report to work due to illness caused by COVID-19 or quarantines related to COVID-19 and individuals directly affected by COVID-19 may experience potential loss of income, health care and medical coverage, and ability to pay for housing and basic needs, thereby placing increased demands on already strained regional and local health and safety resources such as shelters and food banks; and

**WHEREAS** in the interest of public health and safety, it is necessary to exercise my authority under the Emergency Services Act, specifically Government Code section 8572, to ensure adequate facilities exist to address the impacts of COVID-19; and

**WHEREAS** under the provisions of Government Code section 8571, I find that strict compliance with various statutes and regulations specified in this order would prevent, hinder, or delay appropriate actions to prevent and mitigate the effects of the COVID-19 pandemic.

**NOW, THEREFORE, I, GAVIN NEWSOM,** Governor of the State of California, in accordance with the authority vested in me by the State Constitution and statutes of the State of California, and in particular, Government Code sections 8567, 8571 and 8572, do hereby issue the following order to become effective immediately:

**IT IS HEREBY ORDERED THAT:**

1. All residents are to heed any orders and guidance of state and local public health officials, including but not limited to the imposition of social distancing measures, to control the spread of COVID-19.

2. For the period that began January 24, 2020 through the duration of this emergency, the Employment Development Department shall have the discretion to waive the one-week waiting period in Unemployment Insurance Code section 2627(b)(1) for disability insurance applicants who are unemployed and disabled as a result of the COVID-19, and who are otherwise eligible for disability insurance benefits.

3. For the period that began January 24, 2020 through the duration of this emergency, the Employment Development Department shall have the discretion to waive the one-week waiting period in Unemployment Insurance Code section 1253(d) for unemployment insurance applicants who are unemployed as a result of the COVID-19, and who are otherwise eligible for unemployment insurance benefits.

4. Notwithstanding Health and Safety Code section 1797.172(b), during the course of this emergency, the Director of the Emergency Medical Services Authority shall have the authority to implement additions to local optional scopes of practice without first consulting with a committee of local EMS medical directors named by the EMS Medical Directors Association of California.

5. In order to quickly provide relief from interest and penalties, the provisions of the Revenue and Taxation Code that apply to the taxes and fees administered by the Department of Tax and Fee Administration, requiring the filing of a statement under penalty of perjury setting forth the facts for a claim for relief, are suspended for a period of 60 days after the date of this Order for any individuals or businesses who are unable to file a timely tax return or make a timely payment as a result of complying with a state or local public health official's imposition or recommendation of social distancing measures related to COVID-19.

6. The Franchise Tax Board, the Board of Equalization, the Department of Tax and Fee Administration, and the Office of Tax Appeals shall use their administrative powers where appropriate to provide those individuals and businesses impacted by complying with a state or local public health official's imposition or recommendation of social

distancing measures related to COVID-19 with the extensions for filing, payment, audits, billing, notices, assessments, claims for refund, and relief from subsequent penalties and interest.

7. The Governor's Office of Emergency Services shall ensure adequate state staffing during this emergency. Consistent with applicable federal law, work hour limitations for retired annuitants, permanent and intermittent personnel, and state management and senior supervisors, are suspended. Furthermore, reinstatement and work hour limitations in Government Code sections 21220, 21224(a), and 7522.56(b), (d), (f), and (g), and the time limitations in Government Code section 19888.1 and California Code of Regulations, title 2, sections 300-303 are suspended. The Director of the California Department of Human Resources must be notified of any individual employed pursuant to these waivers.

8. The California Health and Human Services Agency and the Office of Emergency Services shall identify, and shall otherwise be prepared to make available—including through the execution of any necessary contracts or other agreements and, if necessary, through the exercise of the State's power to commandeer property – hotels and other places of temporary residence, medical facilities, and other facilities that are suitable for use as places of temporary residence or medical facilities as necessary for quarantining, isolating, or treating individuals who test positive for COVID-19 or who have had a high-risk exposure and are thought to be in the incubation period.

9. The certification and licensure requirements of California Code of Regulations, Title 17,  section 1079 and Business and Professions Code section 1206.5 are suspended as to all persons who meet the requirements under the Clinical Laboratory Improvement Amendments of section 353 of the Public Health Service Act for high complexity testing and who are performing analysis of samples to test for SARS-CoV-2, the virus that causes COVID-19, in any certified public health laboratory or licensed clinical laboratory.

10. To ensure that individuals with developmental disabilities continue to receive the services and supports mandated by their individual program plans threatened by disruptions caused by COVID-19, the Director of the Department of Developmental Services may issue directives waiving any provision or requirement of the Lanterman Developmental Disabilities Services Act, the California Early Intervention Services Act, and the accompanying regulations of Title 17, Division 2 of the California Code of Regulations.  A directive may delegate to the regional centers any authority granted to the Department by law where the Director believes such delegation is necessary to ensure services to individuals with developmental disabilities.  The Director shall describe the need justifying the waiver granted in each directive and articulate how the waiver is necessary to protect the public health or safety from the threat of COVID-19 or necessary to ensure that services to individuals with developmental disabilities are not disrupted.  Any waiver granted by a directive shall expire 30 days from the date of its issuance. The Director may grant one or more 30-day extensions if the waiver continues to be necessary

to protect health or safety or to ensure delivery of services. The Director shall rescind a waiver once it is no longer necessary to protect public health or safety or ensure delivery of services. Any waivers and extensions granted pursuant to this paragraph shall be posted on the Department's website.

11. Notwithstanding any other provision of state or local law, including the Bagley-Keene Act or the Brown Act, a local legislative body or state body is authorized to hold public meetings via teleconferencing and to make public meetings accessible telephonically or otherwise electronically to all members of the public seeking to attend and to address the local legislative body or state body, during the period in which state or local public officials impose or recommend measures to promote social distancing, including but not limited to limitations on public events. All requirements in both the Bagley-Keene Act and the Brown Act expressly or impliedly requiring the physical presence of members, the clerk or other personnel of the body, or of the public as a condition of participation in or quorum for a public meeting are hereby waived.

In particular, any otherwise-applicable requirements that

    (i)    state and local bodies notice each teleconference location from which a member will be participating in a public meeting;

    (ii)    each teleconference location be accessible to the public;

    (iii)    members of the public may address the body at each teleconference conference location;

    (iv)    state and local bodies post agendas at all teleconference locations;

    (v)    at least one member of the state body be physically present at the location specified in the notice of the meeting; and

    (vi)    during teleconference meetings, a least a quorum of the members of the local body participate from locations within the boundaries of the territory over which the local body exercises jurisdiction

are hereby suspended, on the conditions that:

    (i)    each state or local body must give advance notice of each public meeting, according to the timeframe otherwise prescribed by the Bagley-Keene Act or the Brown Act, and using the means otherwise prescribed by the Bagley-Keene Act or the Brown Act, as applicable; and

    (ii)    consistent with the notice requirement in paragraph (i), each state or local body must notice at least one publicly accessible location from which members of the public shall have the right to observe and offer public comment at the public meeting, consistent with the public's rights of access and public comment otherwise provided for by the Bagley-Keene Act and the Brown Act, as applicable (including, but not limited to, the requirement that such rights of access and public comment be made available in a manner consistent with the Americans with Disabilities Act).

In addition to the mandatory conditions set forth above, all state and local bodies are urged to use sound discretion and to make reasonable efforts to adhere as closely as reasonably possible to the provisions of the Bagley-Keene Act and the Brown Act, and other applicable local laws regulating the conduct of public meetings, in order to maximize transparency and provide the public access to their meetings.

**IT IS FURTHER ORDERED** that as soon as hereafter possible, this Order be filed in the Office of the Secretary of State and that widespread publicity and notice be given of this Order.

This Order is not intended to, and does not, create any rights or benefits, substantive or procedural, enforceable at law or in equity, against the State of California, its agencies, departments, entities, officers, employees, or any other person.

**IN WITNESS WHEREOF** I have hereunto set my hand and caused the Great Seal of the State of California to be affixed this 12th day of March 2020.

GAVIN NEWSOM
Governor of California

ATTEST:

ALEX PADILLA
Secretary of State

# EXHIBIT 3

**WHEREAS** on March 4, 2020, I proclaimed a State of Emergency to exist in California as a result of the threat of COVID-19; and

**WHEREAS** in a short period of time, COVID-19 has rapidly spread throughout California, necessitating updated and more stringent guidance from federal, state, and local public health officials; and

**WHEREAS** for the preservation of public health and safety throughout the entire State of California, I find it necessary for all Californians to heed the State public health directives from the Department of Public Health.

**NOW, THEREFORE, I, GAVIN NEWSOM,** Governor of the State of California, in accordance with the authority vested in me by the State Constitution and statutes of the State of California, and in particular, Government Code sections 8567, 8627, and 8665 do hereby issue the following Order to become effective immediately:

**IT IS HEREBY ORDERED THAT:**

1) To preserve the public health and safety, and to ensure the healthcare delivery system is capable of serving all, and prioritizing those at the highest risk and vulnerability, all residents are directed to immediately heed the current State public health directives, which I ordered the Department of Public Health to develop for the current statewide status of COVID-19. Those directives are consistent with the March 19, 2020, Memorandum on Identification of Essential Critical Infrastructure Workers During COVID-19 Response, found at: https://covid19.ca.gov/. Those directives follow:

ORDER OF THE STATE PUBLIC HEALTH OFFICER
March 19, 2020

To protect public health, I as State Public Health Officer and Director of the California Department of Public Health order all individuals living in the State of California to stay home or at their place of residence except as needed to maintain continuity of operations of the federal critical infrastructure sectors, as outlined at https://www.cisa.gov/identifying-critical-infrastructure-during-covid-19. In addition, and in consultation with the Director of the Governor's Office of Emergency Services, I may designate additional sectors as critical in order to protect the health and well-being of all Californians.

Pursuant to the authority under the Health and Safety Code 120125, 120140, 131080, 120130(c), 120135, 120145, 120175 and 120150, this order is to go into effect immediately and shall stay in effect until further notice.

This Order is being issued to protect the public health of Californians. The California Department of Public Health looks to establish consistency across the state in order to ensure that we mitigate the impact of COVID-19. Our goal is simple, we want to bend the curve, and disrupt the spread of the virus.

The supply chain must continue, and Californians must have access to such necessities as food, prescriptions, and health care. When people need to leave their homes or places of residence, whether to obtain or perform the functions above, or to otherwise facilitate authorized necessary activities, they should at all times practice social distancing.

2) The healthcare delivery system shall prioritize services to serving those who are the sickest and shall prioritize resources, including personal protective equipment, for the providers providing direct care to them.

3) The Office of Emergency Services is directed to take necessary steps to ensure compliance with this Order.

4) This Order shall be enforceable pursuant to California law, including, but not limited to, Government Code section 8665.

**IT IS FURTHER ORDERED** that as soon as hereafter possible, this Order be filed in the Office of the Secretary of State and that widespread publicity and notice be given of this Order.

This Order is not intended to, and does not, create any rights or benefits, substantive or procedural, enforceable at law or in equity, against the State of California, its agencies, departments, entities, officers, employees, or any other person.

**IN WITNESS WHEREOF** I have hereunto set my hand and caused the Great Seal of the State of California to be affixed this 19th day of March 2020.

_____
GAVIN NEWSOM
Governor of California

**ATTEST:**

# EXHIBIT 4

STATE CAPITOL
P.O. BOX 942849
SACRAMENTO, CA 94249-0115

# California Legislature

May 6, 2020

The Honorable Gavin Newsom
Governor, State of California
State Capitol
Sacramento, CA 95814

**RE: The November Election – Legislation to protect public health and voting rights**

Dear Governor Newsom:

Thank you for your leadership during this extraordinary and challenging time. The COVID-19 pandemic will have both short- and long-term impacts on our way of life in California, including the November 2020 election.

While the pandemic will not allow for an election to proceed as currently envisioned by state law, **we are announcing a legislative package today to ensure a safe and fair election.**

The November Election must be conducted in a manner that protects public health while safeguarding important and long-held historic civil and voting rights:

1. **A mail ballot option for all.** While legislation has already been introduced to require that all voters be mailed a ballot for this November's election, we respectfully request you issue an Executive Order immediately to formalize that requirement until the pending legislation can be enacted. Immediate action by Executive Order will allow counties to begin the procurement of equipment and materials to allow for every Californian to receive a mail ballot. Unlike many other states, California has provided the opportunity to vote from home for decades. Three-quarters of California voters already receive a mail ballot. Let's mail a ballot to the rest.

2. **Safe in-person voting options are a must.** While mailing voters a ballot is a start, it doesn't eliminate the need for in-person voting. Millions of Californians will need a safe in-person voting location this November because they never received a ballot, lost or damaged their ballot, need language or voting assistance, or need to register to vote.

Unfortunately, a massive reduction in voting locations would result in even longer lines and larger, potentially unsafe gatherings on Election Day.

Instead of widespread elimination of in-person voting locations, we must "flatten the curve" of voting. California voters should have access to in-person options earlier. Existing in-person voting requirements should be the goal, but the minimum standard should be a ratio of 1 location per 10,000 voters for four days statewide, with options to vote even earlier, which will help to flatten the spike of voters participating on Election Day. This would require at least 2,000 locations throughout California to serve 20 million voters – a reasonable minimum to protect public health and voting rights.

In order to accomplish this, legislation will soon be introduced to require county elections officials to establish and maintain a minimum number of polling places and vote centers for the statewide general election to be held on November 3, 2020.

3.    **Voting locations and staffing**. The state should assist counties with acquiring voting locations that will allow for adequate social distancing. The state should also provide assistance with acquiring temporary personnel to staff these locations as well as pre- and post-election duties.

4.    **Adequate PPE & Disinfectant**. The state should ensure that counties have enough personal protective equipment and disinfectant to ensure the safety of election personnel and voters.

5.    **Ballot drop-off locations**. Adequate locations for voters to drop-off their ballot must be established statewide, with a minimum of two ballot drop-off locations within a jurisdiction or at least one ballot drop-off location for every 15,000 registered voters, whichever results in more locations.

6.    **Voter Education**. Notifying voters that they are receiving a mail ballot and to vote early is essential to flattening the Election Day spike. Any savings through potential consolidation of precinct locations should be invested in voter education. We also believe the State Budget should invest in a robust statewide voter education program by the Governor and Secretary of State.

7.    **Flexibility**. Uncertainty about the status of the pandemic may remain well into November and beyond. If the pandemic persists or resurges, nothing would prohibit you from taking dramatic steps to adjust in-person voting requirements at the last minute if public safety requires. But if the State and counties don't start identifying and securing locations now, we won't have enough locations and voters will certainly be disenfranchised.

Counties should begin work immediately in coordination with the Secretary of State, including the creation and submission of an election plan of administration

to ensure all steps are taken to secure adequate and safe locations. Modification waivers could be granted to counties on a case-by-case basis as a last resort.

We look forward to continuing to work with you, your office, the Secretary of State and elections officials to implement these important one-time reforms to ensure we protect the public's health and every voter's sacred right to vote. Please don't hesitate to contact us if you have questions or concerns.

Sincerely,

**TOM UMBERG**
Chair
Senate Elections &
Constitutional Amendments Committee

**MARC BERMAN**
Chair
Assembly Elections &
Redistricting Committee

# EXHIBIT 5

## EXECUTIVE ORDER N-64-20

**WHEREAS** on March 4, 2020, I proclaimed a State of Emergency to exist in California as a result of the threat of COVID-19; and

**WHEREAS** on November 3, 2020, California—like the other states of the United States—will hold a General Election, and Californians throughout the state will exercise their right to vote; and

**WHEREAS** it is unknown to what degree COVID-19 will pose a threat to public health in November, and California and its counties must begin taking action now—to procure supplies, secure polling places, enlist volunteers, and draw up plans, among other steps—to ensure that the November 3, 2020 General Election is held in a manner that is accessible, secure, and safe; and

**WHEREAS** to preserve public health in the face of the threat of COVID-19, and to ensure that the November election is accessible, secure, and safe, all Californians must be empowered to vote by mail, from the safety of their own homes; and

**WHEREAS** it is also essential to ensure that all Californians who may need access to in-person voting opportunities—including individuals with disabilities, individuals who speak languages other than English, individuals experiencing homelessness, and others who may find vote-by-mail less accessible than in-person voting—are able to access such opportunities and exercise their right to vote; and

**WHEREAS** the Secretary of State has been working with California elections officials, voting rights advocates, and other stakeholders to explore how best to implement procedures for the November election that will make in-person voting opportunities available, give county elections officials needed flexibility, and preserve public health; and

**WHEREAS** discussions concerning the November election have been informed, and should continue to be informed, by the ways in which existing California law—including, in particular, the California Voter's Choice Act—provide standards to ensure that, even in the context of an "all-mail ballot" election, voters are able to access in-person voting opportunities; and

**WHEREAS** work in partnership with the Legislature and the Secretary of State, guided by the standards in existing California law and the exigencies of the COVID-19 pandemic, will be essential to ensure that the November election is accessible, secure, and safe; and

election (including requirements concerning the availability of in-person voting opportunities) will be implemented; and

**WHEREAS** it is critical that counties have clarity regarding requirements for in-person voting opportunities and other details of the November election by no later than May 30, 2020, which may require a subsequent Executive Order; and

**WHEREAS** under the provisions of Government Code section 8571, I find that strict compliance with various statutes specified in this Order would prevent, hinder, or delay appropriate actions to prevent and mitigate the effects of the COVID-19 pandemic.

**NOW, THEREFORE, I, GAVIN NEWSOM,** Governor of the State of California, in accordance with the authority vested in me by the State Constitution and statutes of the State of California, and in particular, Government Code sections 8567, 8571, and 8627, do hereby issue the following Order to become effective immediately:

**IT IS HEREBY ORDERED THAT:**

1) Notwithstanding any limitation on the distribution of vote-by-mail ballots in Elections Code sections 1500 and 4000-4007, or any other provision of state law, each county elections officials shall transmit vote-by-mail ballots for the November 3, 2020 General Election to all voters who are, as of the last day on which vote-by-mail ballots may be transmitted to voters in connection with that election, registered to vote in that election. As set forth in this paragraph, every Californian who is eligible to vote in the November 3, 2020 General Election shall receive a vote-by-mail ballot.

2) Nothing in this Order shall be construed to limit the extent to which in-person voting opportunities are made available in connection with the November 3, 2020 General Election. It is the intent of this Order that my Administration continue to work with the Legislature and the Secretary of State to determine how requirements for in-person voting opportunities and other details of the November election will be implemented—guided by California's longstanding commitment to making its elections accessible, as enshrined in existing California law, while recognizing the exigencies of the COVID-19 pandemic.

3) My Administration continues working in partnership with the Secretary of State and the Legislature on requirements for in-person voting opportunities and on how other details of the November election will be implemented. Nothing in this Order is intended, or shall be construed, to limit the enactment of legislation on that subject.

This Order is not intended to, and does not, create any rights or benefits, substantive or procedural, enforceable at law or in equity, against the State of California, its agencies, departments, entities, officers, employees, or any other person.

**IN WITNESS WHEREOF** I have hereunto set my hand and caused the Great Seal of the State of California to be affixed this 8th day of May 2020.

GAVIN NEWSOM
Governor of California

**ATTEST:**

_____

ALEX PADILLA
Secretary of State

# EXHIBIT 6

AMENDED IN ASSEMBLY MAY 27, 2020

AMENDED IN ASSEMBLY MAY 5, 2020

AMENDED IN SENATE APRIL 9, 2019

# SENATE BILL                                       No. 423

**Introduced by Senator Umberg** *and Assembly Member Berman*

February 21, 2019

An act *to add and repeal Chapter 7 (commencing with Section 1600) of Division 1 of the Elections Code,* relating to elections.

LEGISLATIVE COUNSEL'S DIGEST

SB 423, as amended, Umberg. ~~Elections: vote centers and polling places.~~ November 3, 2020, statewide general election.

*Existing law authorizes counties, on or after specified dates, to conduct any election as an all-mailed ballot election if, among other conditions, the county elections official provides for ballot drop-off locations and vote centers meeting minimum requirements. Vote centers are required to be open from the 10th day before the election until election day, as specified.*

*This bill would authorize a county for the November 3, 2020, statewide general election to not have its vote centers open before the 3rd day prior to the election.*

*In counties without all-mailed ballot procedures, existing law requires the elections official to divide the jurisdiction into precincts meeting certain requirements and to designate a polling place for each precinct.*

*This bill would provide an alternative procedure for the November 3, 2020, statewide general election authorizing the elections official to establish consolidated precinct boards, located within the same physical*

96

*polling place, serving the voters residing in multiple adjacent precincts, as provided.*

*For the November 3, 2020, statewide general election, the bill would also (1) require elections officials to conduct a voter education and outreach campaign, (2) urge counties to provide drive-through ballot drop-off or voting locations, (3) authorize elections officials to establish vote centers, polling places, or consolidated polling places in locations whose primary purpose is the sale and dispensation of alcoholic beverages, (4) require the Secretary of State to establish a process to consider requests from counties to adjust or waive the minimally required number, or operational duration, of vote centers, consolidated polling places, or ballot drop-off locations, (5) require the Secretary of State to conduct a statewide voter education and outreach campaign regarding new procedures in place for the election, and (6) require the Secretary of State to establish a strike team to assist counties as needed to acquire suitable locations for vote centers, polling places, and consolidated polling places as well as other assets necessary for the safe and successful conduct of the election.*

*By imposing new requirements on counties, the bill would impose a state-mandated local program.*

*The California Constitution requires the state to reimburse local agencies and school districts for certain costs mandated by the state. Statutory provisions establish procedures for making that reimbursement.*

*This bill would provide that, if the Commission on State Mandates determines that the bill contains costs mandated by the state, reimbursement for those costs shall be made pursuant to the statutory provisions noted above.*

~~Existing law requires a vote by mail voter to return a voted vote by mail ballot to various locations including a polling place or vote center. Existing law imposes various requirements on voting locations that qualify as "vote centers," including the number of locations that must be open and their hours of operation.~~

~~This bill would declare the intent of the Legislature to enact legislation to require county elections officials to establish and maintain a minimum number of polling places and vote centers for the statewide general election to be held on November 3, 2020.~~

Vote: majority. Appropriation: no. Fiscal committee: ~~no~~ *yes*. State-mandated local program: ~~no~~ *yes*.

*The people of the State of California do enact as follows:*

1    SECTION 1.   (a)  The Legislature finds and declares all of the
2    following:
3        (1)  To maintain a healthy democracy in California, it is
4    important to encourage eligible voters to vote and to ensure that
5    residents of the state have the tools needed to participate in every
6    election.
7        (2)  When California conducts the November 3, 2020, statewide
8    general election, it is unknown to what degree the COVID-19
9    pandemic will still pose a threat to public health. The state and
10   its counties need to begin taking action now to procure supplies
11   and equipment, secure voting locations, enlist volunteers, and
12   draw up plans, among other steps, to ensure that the November
13   3, 2020, statewide general election is held in a manner that is
14   accessible, secure, and safe.
15       (3)  To preserve public health in the face of the threat of
16   COVID-19, and to ensure that the November election is accessible,
17   secure, and safe, all Californians will be empowered to vote by
18   mail, from the safety of their own homes, pursuant to Governor
19   Newsom's Executive Order N-64-20, issued on May 8, 2020, and
20   as proposed by Assembly Bill 860 of the 2019–20 Regular Session.
21       (4)  However, many Californians will still need access to
22   in-person voting opportunities, including, but not limited to,
23   individuals with disabilities, individuals who speak languages
24   other than English, individuals experiencing homelessness,
25   individuals who never received their vote-by-mail ballot, lost or
26   damaged their ballot, or need to register to vote, as well as others
27   who may find vote-by-mail less accessible than in-person voting.
28   We owe these Californians safe in-person voting opportunities
29   this November.
30       (b)  It is the intent of the Legislature in enacting this act to do
31   all of the following:
32       (1)  To ensure that the November 3, 2020, statewide general
33   election is conducted in a manner that protects and strengthens
34   access for low-propensity voters and voters who have no history
35   of voting by mail, first-time voters such as young voters and newly
36   naturalized voters, housing insecure voters, and other voters who
37   may be disproportionately impacted by the changes to election
38   procedures that were necessitated by the COVID-19 pandemic.

96

1    (2) To ensure that safe, in-person voting opportunities are
2    available this November in a manner that is consistent with public
3    health guidance and requirements.
4    (3) To provide flexibility to counties in conducting the election
5    in recognition of the challenges to election administration posed
6    by the COVID-19 pandemic, while limiting changes to in-person
7    voting opportunities to the minimum changes necessary to ensure
8    that the election can be conducted in a manner consistent with
9    public health requirements.
10    (4) To redirect any money that is saved from a reduction of
11    in-person voting locations into voter education and outreach for
12    the November 3, 2020, statewide general election.
13    SEC. 2.   Chapter 7 (commencing with Section 1600) is added
14    to Division 1 of the Elections Code, to read:
15
16    CHAPTER 7. NOVEMBER 3, 2020, STATEWIDE GENERAL ELECTION
17
18    1600.   This chapter applies only to the November 3, 2020,
19    statewide general election.
20    1601.   Notwithstanding Sections 4005 and 4007, a county that
21    conducts the November 3, 2020, statewide general election
22    pursuant to either of those sections is not required to have its vote
23    centers open before the third day prior to the election.
24    1602.   (a) A county that does not conduct the November 3,
25    2020, statewide general election pursuant to either Section 4005
26    or 4007 may choose to follow the procedures described in this
27    section as an alternative to procedures that would otherwise be
28    applicable in that county.
29    (b) (1) While maintaining separate geographical precincts
30    under the existing limits on number of voters provided in Section
31    12223, the elections official may establish consolidated precinct
32    boards, located within the same physical polling place, serving
33    the voters residing in multiple adjacent precincts established
34    pursuant to Section 12223 at a maximum ratio of one consolidated
35    precinct board location per 10 precincts, not to exceed a total of
36    10,000 registered voters per location. These consolidated polling
37    locations shall be open starting with the Saturday immediately
38    prior to election day through election day. On the day of the
39    election, the consolidated polling location shall be open from 7

1   *a.m. to 8 p.m. and on each of the three days before the election,*
2   *for a minimum of eight hours per day.*
3       *(2) In establishing the consolidated polling places, the elections*
4   *official shall take into consideration the boundaries of state*
5   *legislative, congressional, county supervisorial, and any other*
6   *affected local legislative districts.*
7       *(3) The elections official shall ensure that the consolidated*
8   *polling places are equitably distributed across the county to afford*
9   *maximally convenient options for all voters and are established*
10  *at accessible locations as near as possible to established public*
11  *transportation routes.*
12      *(4) (A) The consolidated polling places shall be equipped with*
13  *voting units or systems that are accessible to individuals with*
14  *disabilities and provide the same opportunity for access and*
15  *participation as is provided to voters who are not disabled,*
16  *including the ability to vote privately and independently, in*
17  *accordance with Sections 12280 and 19240. Each consolidated*
18  *polling place shall have at least three voting machines that are*
19  *accessible to voters with disabilities.*
20      *(B) The consolidated polling places shall comply with the*
21  *accessibility requirements described in Article 5 (commencing*
22  *with Section 12280) of Chapter 3 of Division 12, the federal*
23  *Americans with Disabilities Act of 1990 (42 U.S.C. Sec. 12101 et*
24  *seq.), the federal Help America Vote Act of 2002 (52 U.S.C. Sec.*
25  *20901 et seq.), and the federal Voting Rights Act of 1965 (52 U.S.C.*
26  *Sec. 10101 et seq.).*
27      *(5) The elections official shall provide each consolidated polling*
28  *place with enough ballots, provisional ballots, and provisional*
29  *ballot envelopes to ensure every voter can be accommodated, as*
30  *necessary.*
31      *(c) (1) In a county with consolidated polling places as described*
32  *in this section, the elections official shall provide at least two ballot*
33  *drop-off locations within the county or at least one ballot drop-off*
34  *location for every 15,000 registered voters, whichever results in*
35  *more ballot drop-off locations. For purposes of this paragraph, a*
36  *consolidated polling place that includes an exterior ballot drop*
37  *box counts only as a single ballot drop-off location.*
38      *(2) A ballot drop-off location provided for under this subdivision*
39  *consists of a secure, accessible, and locked ballot box located as*
40  *near as possible to established public transportation routes and*

1  *that is able to receive voted ballots. All ballot drop-off locations*
2  *shall be open at least during regular business hours beginning not*
3  *less than 28 days before the day of the election, and on the day of*
4  *the election.*
5     *(3) At least one ballot drop-off location shall be an exterior*
6  *drop box that is available for a minimum of 12 hours per day.*
7  *Because health directives to prevent the spread of COVID-19 may*
8  *result in reduced access to some buildings, counties are*
9  *encouraged to maximize the number of ballot drop-off locations*
10  *that are exterior drop boxes or that are located in buildings, such*
11  *as supermarkets or drugstores, that are likely to be considered*
12  *essential businesses that will remain open to the public*
13  *notwithstanding any physical distancing measures that are in place*
14  *during the period beginning 28 days before the date of the election*
15  *and ending on election day.*
16     *(4) For the purposes of this section, "ballot drop-off location"*
17  *has the same meaning as in Section 3025.*
18     *(d) (1) In a county with consolidated polling places as described*
19  *in this section, the elections official shall provide at least one*
20  *location, open at least during regular business hours beginning*
21  *28 days before the day of the election, at which a voter may do*
22  *any of the following:*
23     *(A) Return, or vote and return, the voter's vote by mail ballot.*
24     *(B) Register to vote, update the voter's voter registration, and*
25  *vote pursuant to Section 2170.*
26     *(C) Receive and vote a provisional ballot pursuant to Section*
27  *3016 or Article 5 (commencing with Section 14310) of Chapter 3*
28  *of Division 14.*
29     *(D) Receive a replacement ballot upon verification that a ballot*
30  *for the same election has not been received from the voter by the*
31  *county elections official. If the county elections official is unable*
32  *to determine if a ballot for the same election has been received*
33  *from the voter, the county elections official may issue a provisional*
34  *ballot.*
35     *(E) Vote a regular, provisional, or replacement ballot using*
36  *accessible voting equipment that provides for a private and*
37  *independent voting experience.*
38     *(2) The elections official is urged to offer voters the ability to*
39  *schedule an appointment to visit a location established pursuant*
40  *to this subdivision.*

1    *(e)  In determining the locations of consolidated polling places*
2    *and ballot drop-off locations pursuant to this section, the county*
3    *shall consider vote center and ballot drop-off location proximity*
4    *to communities with historically low vote by mail usage. Counties*
5    *shall also consider other criteria described in subparagraph (B)*
6    *of paragraph (10) of subdivision (a) of Section 4005, to the extent*
7    *data is readily available.*
8    *(f)  Prior to finalizing the locations of consolidated polling places*
9    *and ballot drop-off locations, the county elections official shall*
10   *publicly notice the proposed consolidated polling place locations*
11   *and ballot drop-off locations, shall post a copy of those locations*
12   *on the elections official's internet website, and shall accept public*
13   *comments on the proposed locations for at least 10 days after*
14   *publicly noticing the proposed locations. Following the 10-day*
15   *public comment period, the elections official shall consider any*
16   *comments the official receives from the public, and shall adjust*
17   *consolidated polling place and ballot drop-off locations in response*
18   *to the public comments to the extent the official deems appropriate*
19   *before finalizing the locations to be used as consolidated polling*
20   *places and ballot drop-off locations.*
21   *1603.  (a)  Each county shall conduct a voter education and*
22   *outreach campaign in all legally required languages notifying*
23   *voters about mail ballots, early voting opportunities, and where*
24   *and how to remedy any voting related problem.*
25   *(b)  Each county is urged to provide drive-through ballot drop-off*
26   *or voting locations. If a voter is waiting in a vehicle, the voter is*
27   *considered "in line" for the purposes of keeping the polls open a*
28   *sufficient time to enable them to vote pursuant to Section 14401.*
29   *(c)  Notwithstanding Section 12288, an elections official may*
30   *establish a vote center, polling place, or consolidated polling place*
31   *in a location whose primary purpose is the sale and dispensation*
32   *of alcoholic beverages.*
33   *1604.  (a)  (1)  The Secretary of State shall establish a process*
34   *to consider requests from counties to adjust or waive the minimally*
35   *required number, or operational duration, of vote centers,*
36   *consolidated polling places, or ballot drop-off locations described*
37   *in Section 1602 or Sections 4005 and 4007. The process shall*
38   *include, but not be limited to, review and modification, denial, or*
39   *granting of a county's request in a timeframe to be determined by*
40   *the Secretary of State.*

1    *(2) (A) Prior to requesting a modification or waiver pursuant*
2    *to paragraph (1), a county shall develop a draft plan that includes,*
3    *but is not limited to, a written analysis of in-person voting needs*
4    *in that county. The written analysis shall identify how the county's*
5    *proposed levels of in-person voting are designed to safely*
6    *accommodate the anticipated demand for voting services at those*
7    *locations, including in-person voting, ballot replacement, ballot*
8    *drop-off, conditional voter registration, language assistance, and*
9    *voting assistance, shall report on efforts made to secure the*
10   *otherwise required number of vote centers, consolidated polling*
11   *places, and election personnel, and shall include a discussion of*
12   *how the elections official will ensure that there will not be a*
13   *disparate impact on any protected class of voters with regard to*
14   *availability of voting machines and voting locations. In determining*
15   *in-person voting locations that will be made available pursuant*
16   *to the plan, the county shall consider the needs of individuals who*
17   *do not have a history of voting by mail and other criteria described*
18   *in subparagraph (B) of paragraph (10) of subdivision (a) of Section*
19   *4005, to the extent data is readily available.*
20   *(B) The county elections official shall publicly notice the draft*
21   *plan required by subparagraph (A), shall post a copy of the draft*
22   *plan on the elections official's internet website, and shall accept*
23   *public comments on the draft plan for at least 10 days after publicly*
24   *noticing the draft plan.*
25   *(C) Following the 10-day review period required by*
26   *subparagraph (B), the elections official shall consider any public*
27   *comments the official receives from the public, shall amend the*
28   *draft plan in response to the public comments to the extent the*
29   *official deems appropriate, and may adopt a final plan and submit*
30   *that plan to the Secretary of State along with the request for a*
31   *modification or waiver pursuant to paragraph (1).*
32   *(3) A waiver or modification shall not be granted to a county*
33   *unless the elections official in that county can demonstrate both*
34   *of the following:*
35   *(A) The official made best efforts to secure the required*
36   *in-person voting locations.*
37   *(B) The plan will not have a negative disparate impact on any*
38   *protected class of voters.*
39   *(4) For the purposes of this subdivision, "protected class"*
40   *means a class of voters who are members of a race, color, or*

96

1   *language minority group, as this class is referenced and defined*
2   *in the federal Voting Rights Act of 1965 (52 U.S.C. Sec. 10301 et*
3   *seq.).*
4   *(b) The Secretary of State shall conduct a statewide voter*
5   *education and outreach campaign regarding new procedures in*
6   *place for the November 3, 2020, statewide general election,*
7   *including, but not limited to, procedures relating to voting by mail,*
8   *newly consolidated polling places and services provided therein,*
9   *available language assistance, voter registration, conditional voter*
10  *registration and voting, and accessible vote by mail voting.*
11  *(c) The Secretary of State shall establish a strike team to assist*
12  *counties as needed to acquire suitable locations for vote centers,*
13  *polling places, and consolidated polling places as well as other*
14  *assets necessary for the safe and successful conduct of the*
15  *November 3, 2020, statewide general election. The strike team*
16  *shall include members of the Secretary of State's legal and*
17  *investigative divisions as well as Deputy Attorneys General*
18  *provided for this purpose by the Department of Justice. The strike*
19  *team shall assist with the enforcement of this code, including, but*
20  *not limited to, Article 5 (commencing with Section 12280) of*
21  *Chapter 3 of Division 12 and Chapter 1 (commencing with Section*
22  *18000) of Division 18. In undertaking its responsibilities, the strike*
23  *team shall seek to ensure that the November 3, 2020, statewide*
24  *general election is conducted in a manner that is as consistent as*
25  *possible with state and federal voting rights laws.*
26  *(d) The Secretary of State is encouraged to work with health*
27  *officials, elections officials, and other stakeholders to establish*
28  *guidelines for the use of personal protective equipment by*
29  *individuals at in-person voting locations, including election*
30  *workers, precinct board members, and voters. These guidelines*
31  *may include, but are not limited to, requiring that individuals who*
32  *are physically present at voting locations wear personal protective*
33  *equipment when they are required by state or local health*
34  *guidelines, ensuring that elections officials have sufficient personal*
35  *protective equipment for use at in-person voting locations by*
36  *election workers, precinct board members, and voters, and*
37  *procedures to ensure that voters are not turned away from using*
38  *in-person voting locations due to a lack of access to the necessary*
39  *personal protective equipment.*

96

1   1605.   Notwithstanding any other law, a county may only hold
2   the November 3, 2020, statewide general election in the manner
3   provided for in this chapter if each voter is also provided a vote
4   by mail ballot.
5   1606.   This chapter shall remain in effect only until January 1,
6   2021, and as of that date is repealed.
7   SEC. 3.   If the Commission on State Mandates determines that
8   this act contains costs mandated by the state, reimbursement to
9   local agencies and school districts for those costs shall be made
10   pursuant to Part 7 (commencing with Section 17500) of Division
11   4 of Title 2 of the Government Code.
12   SECTION 1.   It is the intent of the Legislature to enact
13   legislation to require county elections officials to establish and
14   maintain a minimum number of polling places and vote centers
15   for the statewide general election to be held on November 3, 2020.

O

# EXHIBIT 7

**WHEREAS** on March 4, 2020, I proclaimed a State of Emergency to exist in California as a result of the threat of COVID-19; and

**WHEREAS** on November 3, 2020, California—like the other states of the United States—will hold a General Election, and Californians throughout the state will exercise their right to vote; and

**WHEREAS** while the future course of the COVID-19 pandemic cannot be known with certainty, state, national, and international projections reflect ongoing danger from the pandemic throughout the remainder of this year, and experts believe that COVID-19 will remain a threat to public health during the November election; and

**WHEREAS** California and its counties must take action now—to procure supplies, secure polling places, enlist volunteers, and draw up plans, among other steps—to ensure that the November 3, 2020 General Election is held in a manner that is accessible, secure, and safe; and

**WHEREAS** to preserve public health in the face of the threat of COVID-19, and to ensure that the November election is accessible, secure, and safe, all Californians who are registered to vote in that election must be empowered to vote by mail, as an alternative to in-person voting, where appropriate; and

**WHEREAS** it is also essential to ensure that all Californians who may need access to in-person voting opportunities—including individuals with disabilities, individuals who speak languages other than English, individuals experiencing homelessness, and others who may find vote-by-mail less accessible than in-person voting—are able to access such opportunities and exercise their right to vote; and

**WHEREAS** it is vital that California voters not be disenfranchised as a result of the COVID-19 pandemic, and that the November election be conducted in a way that promotes eligible voters' participation in our democracy; and

**WHEREAS** on May 8, 2020, I issued Executive Order N-64-20, which provides that Californians registered to vote in the November 3, 2020 General Election shall receive vote-by-mail ballots; and

**WHEREAS** as contemplated by Executive Order N-64-20, my Administration has been working and continues to work in partnership with the Legislature and the Secretary of State concerning the implementation of requirements for in-person voting opportunities and other details and fiscal impacts of the November election, and nothing in this Order is intended to limit legislative action on those subjects; and

**WHEREAS** it is now critical—given counties' pressing need to take action to

prevent overcrowding and to otherwise maintain physical distancing at in-person voting locations; and

**WHEREAS** public and private entities and individuals are encouraged to cooperate with county elections officials in administering the November election (including by volunteering their time and property, where appropriate), and county elections officials are encouraged to consider using all mechanisms provided by existing law to secure voting locations and elections personnel for that election, which may include the use of public buildings (such as school buildings and state office buildings) pursuant to Elections Code sections 12283–12284, and which may (in light of the threat posed by the COVID-19 pandemic) also include the assignment of public employees as disaster services workers pursuant to Government Code section 3100; and

**WHEREAS** under the provisions of Government Code section 8571, I find that strict compliance with various statutes specified in this Order would prevent, hinder, or delay appropriate actions to prevent and mitigate the effects of the COVID-19 pandemic.

**NOW, THEREFORE, I, GAVIN NEWSOM,** Governor of the State of California, in accordance with the authority vested in me by the State Constitution and statutes of the State of California, and in particular, Government Code sections 8567, 8571, and 8627, do hereby issue the following Order to become effective immediately:

**IT IS HEREBY ORDERED THAT:**

1) As provided by Executive Order N-64-20, all Californians who are registered (and otherwise eligible) to vote in the November 3, 2020 General Election shall receive vote-by-mail ballots. Consistent with Elections Code section 2226, this provision is not intended, and shall not be construed, to mean that voters in an inactive voter registration status shall receive vote-by-mail ballots in connection with the November 3, 2020 General Election.

2) Notwithstanding any contrary provision of state law (including, but not limited to, Elections Code sections 3019.5 and 3019.7), all county elections officials are required to use the Secretary of State's vote-by-mail ballot tracking system, created pursuant to Elections Code section 3019.7, and to use Intelligent Mail Barcodes on all vote-by-mail ballot envelopes.

3) Notwithstanding any contrary provision of state law (including, but not limited to, any such provision of Elections Code sections 12200–12286 or 12288, and specifically including the requirement in Elections Code section 12286(a)(3) that at least one polling place be designated per precinct), a county that is not subject to the California Voter's Choice Act shall not, in connection with the November 3, 2020 General Election, be required to make available more than one polling place

   i)  From Saturday, October 31, 2020, through Monday, November 2, 2020, for at least eight hours (during regular hours convenient for members of the public) each day; and

   ii)  On Tuesday, November 3, 2020, from 7 a.m. until 8 p.m.

  b) At least the following number of vote-by-mail ballot drop-off locations (as defined in Elections Code section 3025(a)(2)) is made available for ballot drop-off beginning no later than 9 a.m. on Tuesday, October 6, 2020, and continuing during regular business hours each day through the close of voting on Tuesday, November 3, 2020:

   i)  At least one vote-by-mail ballot drop-off location per 15,000 registered voters; and

   ii)  Not less than two vote-by-mail ballot drop-off locations regardless of the number of registered voters; and

  c) At least one vote-by-mail ballot drop-off location required by subparagraph (b) is fully accessible to the public for at least twelve hours each day (during regular hours convenient for members of the public) between Tuesday, October 6, 2020 and Tuesday, November 3, 2020, inclusive.

4) Notwithstanding any contrary provision of state law (including, but not limited to, any such provision of Elections Code section 4005 or section 4007, as applicable), a county that is subject to the California Voter's Choice Act shall not, in connection with the November 3, 2020 General Election, be required to open any vote center (as that term is used in Elections Code sections 357.5, 4005, and 4007) prior to Saturday, October 31, 2020. Counties are nevertheless encouraged to open vote centers earlier, where feasible and as conditions warrant, to maximize opportunities for voter participation in the November 3, 2020 General Election.

5) Notwithstanding any contrary provision of state law (including, but not limited to, any such provision of Elections Code section 4005(a)(10)), no county elections official shall be required to conduct any in-person public meetings or workshops in connection with the preparation of plans for the administration of the November 3, 2020 General Election, as long as a draft of each such plan is posted on the relevant county election official's website in a manner consistent with Elections Code section 4005(a)(10)(E)(iii) and the relevant county elections official accepts public comment on the draft plan for at least 10 days. Counties are encouraged to take additional steps, where feasible, to

conditionally suspended by Paragraph 3 as to counties not subject to the California Voter's Choice Act) concerning procedures for the November 3, 2020 General Election. In particular, any county described in Paragraph 3 that complies with all such requirements applicable to that county (and that therefore need not avail itself of the conditional suspension set forth in Paragraph 3) may do so without additionally satisfying any separate requirements that would otherwise be imposed by Paragraph 3. Additionally, where feasible, counties are encouraged to exceed the minimum requirements imposed by this Order, or otherwise imposed by law in connection with the administration of the November 3, 2020 General Election, to maximize opportunities for voter participation in that election.

7) The Legislature and the Secretary of State are requested to continue working in partnership with my Administration to ensure that the November 3, 2020 General Election is safe, secure, and accessible for all, including by ensuring (and by working with county elections officials to ensure) that there is sufficient voter education and outreach to prepare voters to participate in that election. Nothing in this Order is intended, or shall be construed, to limit in any way the enactment of legislation concerning the November 3, 2020 General Election.

**IT IS FURTHER ORDERED** that as soon as hereafter possible, this Order be filed in the Office of the Secretary of State and that widespread publicity and notice be given of this Order.

This Order is not intended to, and does not, create any rights or benefits, substantive or procedural, enforceable at law or in equity, against the State of California, its agencies, departments, entities, officers, employees, or any other person.

**IN WITNESS WHEREOF** I have hereunto set my hand and caused the Great Seal of the State of California to be affixed this 3rd day of June 2020.

GAVIN NEWSOM
Governor of California

**ATTEST:**

ALEX PADILLA
Secretary of State

# EXHIBIT 8

**Assembly Bill No. 860**

CHAPTER 4

An act to amend Sections 3019.7, 3020, and 15101 of, and to add Sections 3000.5 and 3016.7 to, the Elections Code, relating to elections, and declaring the urgency thereof, to take effect immediately.

[Approved by Governor June 18, 2020. Filed with Secretary of
State June 18, 2020.]

LEGISLATIVE COUNSEL'S DIGEST

AB 860, Berman. Elections: vote by mail ballots.

Under existing law, a registered voter may vote by mail by requesting a vote by mail ballot for a specific election or by becoming a permanent vote by mail voter. County elections officials must begin mailing ballots and other required materials to these voters no later than 29 days before the day of the election. Existing law, the California Voter's Choice Act, authorizes any county to conduct any election occurring on or after January 1, 2020, as an all-mailed ballot election if specified conditions are met. In an all-mailed ballot election held under the act, the county elections official must mail a ballot to every registered voter, regardless of whether the voter requested a vote by mail ballot or is a permanent vote by mail voter.

This bill would require county elections officials to mail a ballot to every registered voter for the November 3, 2020, statewide general election.

Existing law requires county elections officials to permit voters with a disability, and military or overseas voters, to cast a ballot using a certified remote accessible vote by mail system.

This bill would require county elections officials to permit any voter to cast a ballot using a certified remote accessible vote by mail system for the November 3, 2020, statewide general election.

Existing law requires the Secretary of State to establish, by January 1, 2020, a system that a county elections official may use to allow a voter to track the voter's vote by mail ballot through the mail system and processing by the county elections official. County elections officials are not required to use the system, however.

This bill would require county elections officials to use the Secretary of State's system, or a system that meets the same specifications, for the November 3, 2020, statewide general election.

Under existing law, a vote by mail ballot is timely cast if it is voted on or before election day and, if returned by mail, received by the voter's elections official via the United States Postal Service, or a bona fide private mail delivery company, no later than 3 days after election day.

94

This bill would, for the November 3, 2020, statewide general election, extend the deadline by which vote by mail ballots must be received by the county elections official to the 17th day after election day.

Under existing law, any jurisdiction having the necessary computer capability may start to process vote by mail ballots on the 10th business day before the election. This processing includes opening vote by mail ballot return envelopes, removing ballots, duplicating any damaged ballots, and preparing the ballots to be machine read, or machine reading them, including processing write-in votes so that they can be tallied by the machine, but under no circumstances may a vote count be accessed or released until 8 p.m. on the day of the election.

This bill would authorize these jurisdictions, for the November 3, 2020, statewide general election, to begin processing vote by mail ballots on the 29th day before the election.

By requiring county elections officials to mail a ballot to every registered voter, and to take other actions expanding vote by mail voting, including making remote accessible voting available to all voters, this bill would impose a state-mandated local program.

The California Constitution requires the state to reimburse local agencies and school districts for certain costs mandated by the state. Statutory provisions establish procedures for making that reimbursement.

This bill would provide that, if the Commission on State Mandates determines that the bill contains costs mandated by the state, reimbursement for those costs shall be made pursuant to the statutory provisions noted above.

This bill would declare that it is to take effect immediately as an urgency statute.

*The people of the State of California do enact as follows:*

SECTION 1.   The Legislature finds and declares all of the following:

(a)  To maintain a healthy democracy in California, it is important to encourage eligible voters to vote and to ensure that residents of the state have the tools needed to participate in every election.

(b)  Vote by mail voting has become the means by which most Californians exercise their right to vote. In the most recent statewide general election, held in November 2018, 65.31 percent of voters used a vote by mail ballot. Just 10 years ago, in the November 2010 statewide general election, only 48.44 percent of voters used a vote by mail ballot.

(c)  Preliminary data indicates that for the March 2020 statewide primary election, approximately 78 percent of registered voters received a ballot in the mail.

(d)  Shortly after the March 2020 statewide primary election, the Governor and local governments declared states of emergency and took steps to reduce the spread of COVID-19. One of the early steps taken by the Governor was to order that three pending special elections be conducted as all-mailed

ballot elections. This order was issued based on concerns that widespread in-person voting would conflict with public health officials' guidance on COVID-19.

(e) Since California held its statewide primary election in March 2020, at least 16 states have either postponed their scheduled primary elections, or switched them to vote by mail elections, due to concerns that conducting in-person voting during the spread of COVID-19 would threaten the health and safety of voters, election workers, and the general public.

(f) In Wisconsin's statewide primary election conducted on April 7, 2020, during which millions of voters had no choice but to vote in person, elections officials were forced to significantly reduce the number of polling locations because of COVID-19. In Milwaukee, the number of polling locations open on election day was reduced by more than 97 percent.

(g) A statewide general election will be held in California on November 3, 2020, and it is uncertain whether by that date the COVID-19 pandemic will have subsided and what social distancing guidelines will remain in place. Even if the pandemic has subsided by the time of the election, many voters may nonetheless be uncomfortable with in-person voting because of health concerns.

(h) Broadening the ability of California residents to engage in the democratic process will yield more representative election results and will ensure that the voices of more California residents are heard.

(i) Mailing every voter a ballot for the November 2020 statewide general election is an important step in promoting resilience in the state's elections and ensuring that every California voter will have the opportunity to fill out their ballot in a safe manner.

(j) Consistent with paragraph (2) of subdivision (a) of Section 2226 of the Elections Code, and with the longstanding interpretation by state and local elections officials of Sections 4000 to 4108, inclusive, of the Elections Code governing the conduct of all-mailed ballot elections and of Section 3005 of the Elections Code governing mailed ballot precincts, nothing in this act is intended, and shall not be construed, to mean that a voter with an inactive voter registration status shall receive a vote by mail ballot for the November 3, 2020, statewide general election.

SEC. 2.   Section 3000.5 is added to the Elections Code, to read:

3000.5.   (a) Notwithstanding any other law, for the statewide general election to be held on November 3, 2020, the county elections official shall, no later than 29 days before the day of the election, begin mailing the materials specified in Section 3010 to every registered voter in the county. The county elections official shall have five days to mail a ballot to each person who is registered to vote on the 29th day before the day of the election and five days to mail a ballot to each person who is subsequently registered to vote. The county elections official shall not discriminate against any region or precinct in the county in choosing which ballots to mail first within the prescribed five-day mailing period.

94

(b) The distribution of vote by mail ballots to all registered voters does not prevent a voter from voting in person at a polling place, vote center, or other authorized location.

SEC. 3.   Section 3016.7 is added to the Elections Code, to read:

3016.7.   For the statewide general election to be held on November 3, 2020, the county elections official shall permit any voter to cast a ballot using a certified remote accessible vote by mail system, regardless of whether the voter is a voter with disabilities or a military or overseas voter.

SEC. 4.   Section 3019.7 of the Elections Code is amended to read:

3019.7.   (a)  Not later than January 1, 2020, the Secretary of State shall establish a system that a county elections official may use to allow a vote by mail voter to track the voter's vote by mail ballot through the mail system and as the vote by mail ballot is processed by the county elections official. The system established pursuant to this section shall, at a minimum, allow a voter to register to receive information via email or text message from the county elections official about the status of the voter's vote by mail ballot, including all of the following information:

(1)  A notification when the ballot has been delivered by the county elections official to the United States Postal Service.

(2)  A notification of the date, based on information from the United States Postal Service, that the voter's ballot is expected to be delivered to the voter.

(3)  A notification if the voter's ballot is returned as undeliverable to the county elections official by the United States Postal Service.

(4)  A notification when the voter's completed ballot has been received by the county elections official.

(5)  A notification that the voter's completed ballot has been counted, or, if the ballot cannot be counted, a notification of the reason why the ballot could not be counted and instructions of any steps that the voter can take in order to have the ballot counted.

(6)  A reminder of the deadline for the voter to return the voter's ballot if the county elections official has not received a voter's completed ballot by specified dates as determined by the county elections official.

(b)  The Secretary of State shall make the system established pursuant to subdivision (a) available for use by each county. A county elections official may use the system for the purpose of complying with Section 3019.5.

(c)  The Secretary of State shall use funds provided to the state pursuant to the federal Help America Vote Act of 2002 (52 U.S.C. Sec. 20901 et seq.) to develop the system described in this section. The Secretary of State shall implement this section only to the extent that these funds are available.

(d)  For the statewide general election to be held on November 3, 2020, the county elections official shall use the system established by the Secretary of State pursuant to subdivision (a), unless the county makes available to voters a different vote by mail ballot tracking system that meets or exceeds the level of service provided by the Secretary of State's system.

SEC. 5.   Section 3020 of the Elections Code is amended to read:

94

3020. (a) All vote by mail ballots cast under this division shall be received by the elections official from whom they were obtained or by the precinct board no later than the close of the polls on election day.

(b) Notwithstanding subdivision (a), any vote by mail ballot cast under this division shall be timely cast if it is received by the voter's elections official via the United States Postal Service or a bona fide private mail delivery company no later than three days after election day and either of the following is satisfied:

(1) The ballot is postmarked on or before election day or is time stamped or date stamped by a bona fide private mail delivery company on or before election day.

(2) If the ballot has no postmark, a postmark with no date, or an illegible postmark, the vote by mail ballot identification envelope is date stamped by the elections official upon receipt of the vote by mail ballot from the United States Postal Service or a bona fide private mail delivery company, and is signed and dated pursuant to Section 3011 on or before election day.

(c) For purposes of this section, "bona fide private mail delivery company" means a courier service that is in the regular business of accepting a mail item, package, or parcel for the purpose of delivery to a person or entity whose address is specified on the item.

(d) Notwithstanding subdivisions (a) and (b), for the statewide general election to be held on November 3, 2020, any vote by mail ballot cast under this division shall be timely cast if it is received by the voter's elections official via the United States Postal Service or a bona fide private mail delivery company by the 17th day after election day and either of the following is satisfied:

(1) The ballot is postmarked on or before election day, is time stamped or date stamped by a bona fide private mail delivery company on or before election day, or it is otherwise indicated by the United States Postal Service or a bona fide private mail delivery company that the ballot was mailed on or before election day.

(2) If the ballot has no postmark, a postmark with no date, or an illegible postmark, and no other information is available from the United States Postal Service or the bona fide private mail delivery company to indicate the date on which the ballot was mailed, the vote by mail ballot identification envelope is date stamped by the elections official upon receipt of the vote by mail ballot from the United States Postal Service or a bona fide private mail delivery company, and is signed and dated pursuant to Section 3011 on or before election day.

SEC. 6. Section 15101 of the Elections Code is amended to read:

15101. (a) Any jurisdiction in which vote by mail ballots are cast may begin to process vote by mail ballot return envelopes beginning 29 days before the election. Processing vote by mail ballot return envelopes may include verifying the voter's signature on the vote by mail ballot return envelope pursuant to Section 3019 and updating voter history records.

(b) (1) Any jurisdiction having the necessary computer capability may start to process vote by mail ballots on the 10th business day before the

94

election. Processing vote by mail ballots includes opening vote by mail ballot return envelopes, removing ballots, duplicating any damaged ballots, and preparing the ballots to be machine read, or machine reading them, including processing write-in votes so that they can be tallied by the machine, but under no circumstances may a vote count be accessed or released until 8 p.m. on the day of the election. All other jurisdictions shall start to process vote by mail ballots at 5 p.m. on the day before the election.

(2)  For the statewide general election to be held on November 3, 2020, any jurisdiction having the necessary computer capability may start to process vote by mail ballots on the 29th day before the election. Processing vote by mail ballots includes opening vote by mail ballot return envelopes, removing ballots, duplicating any damaged ballots, and preparing the ballots to be machine read, or machine reading them, including processing write-in votes so that they can be tallied by the machine, but under no circumstances may a vote count be accessed or released until 8 p.m. on the day of the election. All other jurisdictions shall start to process vote by mail ballots at 5 p.m. on the day before the election.

(c)  Results of any vote by mail ballot tabulation or count shall not be released before the close of the polls on the day of the election.

SEC. 7.   If the Commission on State Mandates determines that this act contains costs mandated by the state, reimbursement to local agencies and school districts for those costs shall be made pursuant to Part 7 (commencing with Section 17500) of Division 4 of Title 2 of the Government Code.

SEC. 8.   This act is an urgency statute necessary for the immediate preservation of the public peace, health, or safety within the meaning of Article IV of the California Constitution and shall go into immediate effect. The facts constituting the necessity are:

To ensure that county elections officials have sufficient time to prepare and mail a ballot to every registered voter in advance of the November 3, 2020, statewide general election, it is necessary for this act to take effect immediately.

O

# EXHIBIT 9

*California*
LEGISLATIVE INFORMATION

| Home | Bill Information | California Law | Publications | Other Resources | My Subscriptions | My Favorites |
|------|-----------------|---------------|--------------|-----------------|------------------|--------------|

**AB-860 Elections: vote by mail ballots.** (2019-2020)

| Bill Votes | |
|------------|--|
| Date | 06/18/20 |
| Result | (PASS) |
| Location | Assembly Floor |
| Ayes Count | 68 |
| Noes Count | 5 |
| NVR Count | 6 |
| Motion | AB 860 Berman Concurrence - Urgency Added |
| Ayes | Aguiar-Curry, Arambula, Bauer-Kahan, Berman, Bloom, Boerner Horvath, Bonta, Burke, Calderon, Carrillo, Cervantes, Chau, Chen, Chiu, Chu, Cooper, Cunningham, Megan Dahle, Daly, Diep, Eggman, Frazier, Friedman, Gabriel, Gallagher, Cristina Garcia, Eduardo Garcia, Gipson, Gloria, Gonzalez, Gray, Grayson, Holden, Irwin, Jones-Sawyer, Kalra, Kamlager, Kiley, Lackey, Levine, Limón, Low, Maienschein, Mayes, McCarty, Medina, Mullin, Muratsuchi, Nazarian, Obernolte, O'Donnell, Petrie-Norris, Quirk, Quirk-Silva, Ramos, Reyes, Luz Rivas, Robert Rivas, Rodriguez, Blanca Rubio, Salas, Santiago, Smith, Mark Stone, Ting, Weber, Wicks, Rendon |
| Noes | Brough, Fong, Mathis, Patterson, Waldron |
| NVR | Bigelow, Choi, Cooley, Flora, Voepel, Wood |

| Bill Votes | |
|------------|--|
| Date | 06/16/20 |
| Result | (PASS) |
| Location | Asm Elections and Redistricting |
| Ayes Count | 6 |
| Noes Count | 0 |
| NVR Count | 1 |
| Motion | With recommendation: That Senate amendments be concurred in. |
| Ayes | Berman, Calderon, Gallagher, Low, Mayes, Mullin |
| Noes | |
| NVR | Weber |

| Bill Votes | |
|------------|--|
| Date | 06/11/20 |
| Result | (PASS) |
| Location | Senate Floor |
| Ayes Count | 31 |
| Noes Count | 7 |
| NVR Count | 2 |
| Motion | Assembly 3rd Reading AB860 Berman et al. By Umberg Urgency Clause |
| Ayes | Allen, Archuleta, Atkins, Beall, Bradford, Caballero, Chang, Dodd, Durazo, Galgiani, Glazer, Lena Gonzalez, Hertzberg, Hill, Hueso, Jackson, Leyva, McGuire, Mitchell, Monning, Moorlach, Pan, Portantino, Roth, Rubio, Skinner, Stern, Umberg, Wieckowski, Wiener, Wilk |
| Noes | Bates, Dahle, Grove, Jones, Melendez, Morrell, Nielsen |
| NVR | Borgeas, Hurtado |

| Bill Votes | |
|------------|--|
| Date | 06/09/20 |
| Result | (PASS) |
| Location | Sen Appropriations |
| Ayes Count | 5 |
| Noes Count | 2 |
| NVR Count | 0 |

Case 2:20-cv-01044-MCE-CKD   Document 59-4   Filed 06/25/20   Page 52 of 68

| Motion | |
| --- | --- |
| Ayes | Bradford, Hill, Leyva, Portantino, Wieckowski |
| Noes | Bates, Jones |
| NVR | |

### Bill Votes

| | |
| --- | --- |
| Date | 06/09/20 |
| Result | (FAIL) |
| Location | Sen Appropriations |
| Ayes Count | 2 |
| Noes Count | 5 |
| NVR Count | 0 |
| Motion | Placed on suspense file |
| Ayes | Bates, Jones |
| Noes | Bradford, Hill, Leyva, Portantino, Wieckowski |
| NVR | |

### Bill Votes

| | |
| --- | --- |
| Date | 06/02/20 |
| Result | (PASS) |
| Location | Sen Elections and Constitutional Amendments |
| Ayes Count | 4 |
| Noes Count | 1 |
| NVR Count | 0 |
| Motion | Do pass, but first be re-referred to the Committee on [Appropriations] |
| Ayes | Hertzberg, Leyva, Stern, Umberg |
| Noes | Nielsen |
| NVR | |

### Bill Votes

| | |
| --- | --- |
| Date | 05/02/19 |
| Result | (PASS) |
| Location | Assembly Floor |
| Ayes Count | 76 |
| Noes Count | 0 |
| NVR Count | 4 |
| Motion | AB 860 Berman Consent Calendar Second Day Regular Session |
| Ayes | Aguiar-Curry, Bauer-Kahan, Berman, Bigelow, Bloom, Boerner Horvath, Bonta, Brough, Burke, Calderon, Carrillo, Cervantes, Chau, Chen, Chiu, Choi, Chu, Cooley, Cooper, Cunningham, Dahle, Daly, Diep, Eggman, Flora, Fong, Frazier, Friedman, Gabriel, Gallagher, Cristina Garcia, Eduardo Garcia, Gipson, Gloria, Gonzalez, Gray, Holden, Irwin, Jones-Sawyer, Kalra, Kamlager-Dove, Kiley, Lackey, Levine, Limón, Low, Maienschein, Mathis, Mayes, McCarty, Medina, Melendez, Muratsuchi, Nazarian, Obernolte, O'Donnell, Patterson, Petrie-Norris, Quirk-Silva, Ramos, Reyes, Luz Rivas, Robert Rivas, Rodriguez, Blanca Rubio, Salas, Santiago, Smith, Mark Stone, Ting, Voepel, Waldron, Weber, Wicks, Wood, Rendon |
| Noes | |
| NVR | Arambula, Grayson, Mullin, Quirk |

### Bill Votes

| | |
| --- | --- |
| Date | 04/24/19 |
| Result | (PASS) |
| Location | Asm Appropriations |
| Ayes Count | 18 |
| Noes Count | 0 |
| NVR Count | 0 |
| Motion | Do pass. To Consent Calendar. |
| Ayes | Bigelow, Bloom, Bonta, Brough, Calderon, Carrillo, Chau, Diep, Eggman, Fong, Gabriel, Gonzalez, Jones-Sawyer, Maienschein, Obernolte, Petrie-Norris, Quirk, Robert Rivas |
| Noes | |
| NVR | |

### Bill Votes

| | |
| --- | --- |
| Date | 04/03/19 |

Case 2:20-cv-01044-MCE-CKD   Document 59-4   Filed 06/25/20   Page 53 of 68

| | |
|---|---|
| **Result** | (PASS) |
| **Location** | Asm Governmental Organization |
| **Ayes Count** | 20 |
| **Noes Count** | 0 |
| **NVR Count** | 1 |
| **Motion** | Do pass and be re-referred to the Committee on [Appropriations] |
| **Ayes** | Aguiar-Curry, Berman, Bigelow, Bonta, Brough, Cooley, Cooper, Daly, Gallagher, Gipson, Gray, Jones-Sawyer, Kamlager-Dove, Lackey, Low, Mathis, Melendez, Robert Rivas, Blanca Rubio, Salas |
| **Noes** | |
| **NVR** | Eduardo Garcia |

# EXHIBIT 10

# EXECUTIVE DEPARTMENT
## STATE OF CALIFORNIA



### EXECUTIVE ORDER NO. W-29-92

I, PETE WILSON, Governor of the State of California, having declared a State of Emergency within the County of Los Angeles and at the request of the Secretary of State on behalf of the Los Angeles Registrar-Recorder/County Clerk, hereby invoke and promulgate the following emergency orders pursuant to Government Code section 8571.

1. Operation of Elections Code sections 301 and 305 is temporarily suspended until May 8, 1992.

2. The Registrar-Recorder/County Clerk of Los Angeles shall accept as timely filed and effective for the June 2, 1992 Primary Election any properly completed affidavit of registration by any citizen of Los Angeles County that is actually received by mail or otherwise by the Office of the Registrar-Recorder/County Clerk by 5:00 p.m. on Friday, May 8, 1992.

These orders shall take effect immediately and shall only be effective within the County of Los Angeles.

IN WITNESS WHEREOF, I have hereunto set my hand and caused the Great Seal of the State of California to be affixed this 4th day of May, 1992

Governor of California

ATTEST: Secretary of State

MAY 0 4 1992

# EXHIBIT 11

7259

# EXECUTIVE DEPARTMENT
# STATE OF CALIFORNIA

**F I L E D**
In the office of the Secretary of State
of the State of California

NOV 0 1 1993

MARCH FONG EU, Secretary of State

By _Ann Meyers_
Deputy Secretary of State



### EXECUTIVE ORDER W-69-93

I, PETE WILSON, Governor of the State of California, having declared a State of Emergency within the Counties of Los Angeles, Orange, Riverside, San Bernardino, San Diego, and Ventura, hereby invoke and promulgate the following emergency orders pursuant to Government Code section 8571:

1.  Operation of Elections Code sections 1007, 1009, 1013, 1017, and 14231 is temporarily suspended with respect to any duly registered voter eligible to vote at the November 2, 1993 Special Statewide Election who is a public safety, emergency services or other person officially engaged in responding to the emergencies set forth in the above-referenced orders.

2.  Notwithstanding any other provision of law, elections officials in the above-referenced counties shall, upon demand, issue to any person as described in paragraph one a provisional ballot permitting that person to vote on all statewide measures appearing on the November 2, 1993 Special Statewide Election Ballot. Upon return of such ballot by the voter by the close of the polls on November 2, 1993, the elections official shall immediately transmit for processing said ballot to the elections official in the county where the voter is registered to vote.

3.  The Secretary of State shall, in conjunction with local elections officials, prescribe the procedures for carrying out the provisions of this order.

This order shall take effect immediately and shall remain in effect only as necessary to carry out the purpose of permitting duly registered voters as specified above to vote at the November 2, 1993 Special Statewide Election.

IN WITNESS WHEREOF I have hereunto set my hand and caused the Great Seal of the State of California to be affixed this 1st day of November 1993.

_Pete Wilson_
Governor of California

ATTEST:

_March Fong Eu_
Secretary of State

By _Tony Miller_
Deputy Secretary of State

# EXHIBIT 12

# EXECUTIVE ORDER S-17-09

08/31/2009

**WHEREAS** there are wildfires burning throughout the State of California, with major fires burning in the counties of Los Angeles, Mariposa, Monterey, Placer, Riverside, and San Bernardino; and

**WHEREAS** I and the Lieutenant Governor have recently proclaimed a State of Emergency to exist in the counties of Los Angeles, Mariposa, Monterey, and Placer; and

**WHEREAS** a number of counties are providing mutual aid to help combat these fires, and firefighters and other emergency workers from throughout the State are responding to these fires, and therefore are away from their homes; and

**WHEREAS** a special election will be held on September 1, 2009 in California's 10th Congressional District and its 51st Assembly District; and

**WHEREAS** because of these fires, firefighters and emergency workers in the six counties listed above and in counties providing mutual aid, are away from their polling places and it may be difficult or impossible for these individuals to vote in these elections.

**NOW, THEREFORE, I, ARNOLD SCHWARZENEGGER**, Governor of the State of California, by virtue of the power and authority vested in me by the Constitution and statutes of the State of California, including Government Code section 8571, hereby issue the following orders:

1.  Operation of Elections Code sections 3009, 3011, 3017, 3021, 14212, and 14279 is temporarily suspended with respect to any September 1, 2009 special election in the State, for all duly-eligible voters who are public safety workers, emergency service workers or other persons officially engaged in responding to the fires described above. This suspension shall apply to any such voter who is from the above-listed counties or from any county that is providing mutual aid to help combat these fires.

2.  Notwithstanding any other provision of law, elections officials in the above-referenced counties shall, upon demand, issue a provisional ballot to any person described in paragraph one permitting that person to vote on all measures appearing on any September 1, 2009 special election ballot. Ballots shall be made available at the office of the registrar of voters in the six affected counties, as well as the emergency incident bases in those counties. Upon return of such ballot by the voter by the close of the polls on September 1, 2009, the elections official shall immediately transmit for processing said ballot to the elections official in the county where the voter is registered to vote

3.  The California Emergency Management Agency (CalEMA), the California Department of Forestry and Fire Protection (CalFIRE), and registrars of voters in the six affected counties shall work together and take necessary steps to get ballots to the emergency incident bases in the six affected counties. The registrars of voters in the counties covering California's 10th Congressional District and its 51st Assembly District shall be responsible for ensuring that a facsimile or other copy of the ballots is available at the office of the registrar of voters in each of the six affected counties and at the emergency incident bases in those counties.

4.  The Secretary of State shall, in conjunction with local elections officials, prescribe the procedures for carrying out the provisions of this Order.

This Order is not intended to, and does not, create any rights or benefits, substantive or procedural, enforceable at law or in equity, against the State of California, its agencies, departments, entities, officers, employees, or any other person.

**I FURTHER DIRECT** that as soon as hereafter possible, this Order be filed in the Office of the Secretary of State and that widespread publicity and notice be given to this Order.

**IN WITNESS WHEREOF** I have hereunto set my hand and caused the Great Seal of the State of California to be affixed this 31st day of August, 2009.

ARNOLD SCHWARZENEGGER
Governor of California

**ATTEST:**
DEBRA BOWEN
Secretary of State

# EXHIBIT 13

# EXECUTIVE ORDER S-19-09

09/01/2009

**WHEREAS** on August 31, 2009 I issued Executive Order S-17-09, which suspended certain provisions of the Elections Code to facilitate voting by firefighters and other emergency service workers who are away from their homes fighting wildfires, and who therefore may find it difficult or impossible to vote in the special elections of September 1, 2009; and

**WHEREAS** some of these firefighters and other workers may not be able to reach a polling place until after 8:00 p.m., when the polls typically close; and

**WHEREAS** it is therefore appropriate to keep certain polling places open after 8:00 p.m., and to set a uniform time for extended voting.

**NOW, THEREFORE, I, ARNOLD SCHWARZENEGGER**, Governor of the State of California, by virtue of the power and authority vested in me by the Constitution and statutes of the State of California, including Government Code section 8571, hereby issue the following order, which shall supplement and be construed in conformity with Executive Order S-17-09:

1.   Notwithstanding Elections Code section 14212, elections officials in the counties of Los Angeles, Mariposa, Monterey, Placer, Riverside, and San Bernardino shall allow firefighters and other emergency workers to cast their ballots in any special election held on September 1, 2009 until 10:00 p.m. on that day, in those areas designated for extended voting by local elections officials.  Those officials shall consult with the Secretary of State, the California Emergency Management Agency, and the California Department of Forestry and Fire Protection in determining which areas to so designate.

2.   In accordance with Elections Code section 15152, election results shall not be released until after 10:00 p.m. on September 1, 2009.

        This Order is not intended to, and does not, create any rights or benefits, substantive or procedural, enforceable at law or in equity, against the State of California, its agencies, departments, entities, officers, employees, or any other person.

        **I FURTHER DIRECT** that as soon as hereafter possible, this Order be filed in the Office of the Secretary of State and that widespread publicity and notice be given to this Order.



**IN WITNESS WHEREOF** I have hereunto set my hand and caused the Great Seal of the State of California to be affixed this 1st day of September 2009.


ARNOLD SCHWARZENEGGER
Governor of California


**ATTEST:**
DEBRA BOWEN
Secretary of State

# EXHIBIT 14

## EXECUTIVE ORDER B-43-17

**WHEREAS** on October 9, 2017, I proclaimed a state of emergency to exist in Butte, Lake, Napa, Orange, Mendocino, Nevada, Sonoma, and Yuba Counties as a result of the numerous wildfires burning in those counties; and

**WHEREAS** on October 10, 2017, I proclaimed a state of emergency to exist in Solano County as a result of the wildfires burning in that county; and

**WHEREAS** these wildfires are far from contained and are already some of the most destructive and devastating wildfires in California's history; and

**WHEREAS** California will require immediate additional resources to assist in responding to, recovering from, and mitigating the effects of these wildfires; and

**WHEREAS** under the provisions of section 8571 of the Government Code, I find that strict compliance with the various statutes and regulations specified in this order would prevent, hinder, or delay the mitigation of the effects of the wildfires; and

**NOW, THEREFORE, I, EDMUND G. BROWN JR.**, Governor of the State of California, in accordance with the authority vested in me by the Constitution and statutes of the State of California, and in particular, sections 8567 and 8571 of the Government Code, do hereby issue the following orders to become effective immediately:

**IT IS HEREBY ORDERED THAT:**

1. The limitation for the period of employment for State Personnel Board emergency appointments, as provided in Government Code section 19888.1 and State Personnel Board Rules 300-303 (California Code of Regulations, title 2, sections 300-303) is waived for positions required for emergency and/or recovery operations. The requirements and period of employment for such appointments will be determined by the Office of Emergency Services, but shall not extend beyond the termination date of the State of Emergency.

2. The Governor's Office of Emergency Services shall ensure adequate state staffing to expedite disaster response and recovery efforts. Consistent with applicable federal law, work hour limitations for retired annuitants, permanent and intermittent personnel, and any overtime restrictions for state management and senior supervisors, are suspended. Furthermore, Government Code sections 21220, 21224(a), and 7522.56(b), (d), (f), and (g), and the time limitations in Government Code section 19888.1 and California Code of Regulations, title 2, sections 300-303 are suspended. The Director of the California Department of Human Resources must be notified of any individual employed pursuant to these waivers.

3. Any firefighters from foreign jurisdictions who are deployed to assist California in fighting these unprecedented wildfires will be covered under the Disaster Service Workers Program, and any provision of the Government Code, Labor Code, or Code of Regulations to the contrary is waived.

Code section 24081 for any businesses that have been forced to relocate as a result of the wildfires. The Department of Alcoholic Beverage Control shall further have the discretion to waive transfer fees beyond the time limitations set forth in Business and Professions Code sections 24081 and 24082.

5. The provisions of California Penal Code section 396 prohibiting price gouging in times of emergency will remain in effect until April 18, 2018 to protect the disaster survivors in the affected counties. The 30-day time period limitation under subsection (b) is hereby waived.

6. At the request of the Sonoma County Registrar of Voters, the County of Sonoma may conduct its November 7, 2017, Consolidated Election wholly by mail, utilizing the procedures set forth in Elections Code section 4100 et seq. The conditions required to conduct an election wholly by mail in Elections Code sections 1500, 4000, 4104, and 4108 are hereby waived. As the November 7, 2017, Consolidated Election, in Sonoma County, will be held wholly by mail, the operation of Division 14 of the Elections Code pertaining to polling place procedures shall also be waived.

7. In order to ensure hospitals and other health facilities remain open, the Director of the State Department of Public Health may waive any of the licensing requirements of division 2 of the Health and Safety Code and accompanying regulations with respect to any hospital or health facility identified in Health and Safety Code section 1250 that is impacted by the fires. Any waiver shall include alternative measures that, under the circumstances, will allow the facilities to remain open while protecting public health and safety. Any facilities being granted a waiver shall be established and operated in accordance with their disaster and mass casualty plan. Any waivers granted pursuant to this paragraph shall be posted on the Department's website.

8. To address the needs for assisted living facilities, adult residential facilities, child care facilities, children's residential facilities, resource family homes, and other similar facilities within the State Department of Social Services' jurisdiction, the Director of the State Department of Social Services may waive any provisions of the Health and Safety Code or Welfare and Institutions Code, and accompanying regulations or written directives, with respect to the use, licensing, or approval of facilities or homes within the Department's jurisdiction set forth in the California Community Care Facilities Act (Health and Safety Code section 1500 et seq.), the California Child Day Care Facilities Act (Health and Safety Code section 1596.70 et seq.), and the California Residential Care Facilities for the Elderly Act (Health and Safety Code section 1569 et seq.). Any waivers granted pursuant to this paragraph shall be posted on the Department's website.

9. Under the Property Tax Postponement program, homeowners who are seniors, blind, or have a disability may defer current-year property taxes on their principal residence if they meet certain criteria, including 40 percent equity in the home and an annual household income of $35,500 or less. To allow counties time to reappraise the value of the property to account for fire damage, the requirement in Revenue and Taxation Code section 20622 that the homeowner file the claim with the Controller by February 10, 2018 is waived as to homeowners in the affected counties. Claims must instead be filed by June 1, 2018.

10. The Franchise Tax Board, the Board of Equalization, the Department of Tax and Fee Administration, and the Office of Tax Appeals shall use their administrative powers where appropriate to provide those individuals and businesses impacted by the wildfires with extensions for filing, audits, billing, notices, assessments, and relief from subsequent penalties.

Parks Act (Health and Safety Code section 18200, et seq., and California Code of Regulations, title 25, section 1000 et seq.), and the Special Occupancy Parks Act (Health and Safety Code section 18860, et seq, and California Code of Regulations, title 25, section 2000 et seq.), are suspended, as these laws pertain to disaster survivors in the impacted counties, for three years after the date of this Executive Order in order to quickly provide housing for those displaced by the fires.

12. The Department of Housing and Community Development and local enforcement agencies with delegated disaster authority will jointly develop permitting, operating, and construction standards to maintain reasonable health and safety standards for the disaster survivors, the residents and the surrounding communities in the impacted areas. Such standards shall provide reasonable consistency with appropriate fire, health, flood, and other factors normally considered in the mobilehome park approval process for the construction of a new mobilehome park or manufactured home installation standards during the three-year suspension authorized by this Executive Order.

13. All fees retained by the state that are imposed by the Mobilehome Parks Act, as required by Health and Safety Code, section 18500 et seq., and the Special Occupancy Parks Act, section 18870 et seq., are suspended and shall be waived by the Department of Housing and Community Development for three years after the date of this Executive Order with regard to manufactured home installation and recreational vehicle use for disaster survivors who are registered owners of a manufactured home or mobilehome, or recreational vehicle, whose home was damaged or destroyed as a result of the fires located in the impacted counties.

14. All fees retained by the state that are imposed by the Mobilehome Parks Act as required by Health and Safety Code section 18503 and California Code of Regulations, title 25, section 1020.1, are suspended and shall be waived by the Department of Housing and Community Development, including fees for any required inspections or plan checking, for any disaster survivors who are a registered owner of a manufactured home or mobilehome whose home was damaged or destroyed as a result of the wildfires located in the impacted counties.

15. All fees retained by the state that are imposed by the Manufactured Housing Act, as required by Health and Safety Code section 18031 and California Code of Regulations, title 25, section 4044, are suspended and shall be waived by the Department of Housing and Community Development, including fees for any required inspections or plan checking, for any registered owner of a manufactured home or mobilehome whose home was damaged or destroyed as a result of the wildfires located in the impacted counties.

16. All fees retained by the state that are imposed by the Manufactured Housing Act, as set forth at Health and Safety Code sections 18114 and 18116, are suspended and fees shall be waived by the Department of Housing and Community Development, including any fees for the late renewal of registration certificate or certificate of title for a manufactured home or mobilehome, by any registered owner that is a disaster survivor and whose home was damaged or destroyed as a result of the wildfires located in the impacted counties.

(commencing with Section 5010) of the California Code of Regulations, title 25, related to establishing proof of ownership are suspended and shall be waived for any mobilehome or manufactured home resident whose home was damaged or destroyed by the identified wildfires for three years of the date of this Executive Order. This waiver shall include, but not be limited to, processing fees for duplicate certificates of title or registrations, salvage applications and salvage certificates, the processing fees and costs for establishing registered ownership pursuant to article 3.5 (commencing with section 5535) of the California Code of Regulations, title 25, and other related fees.

18. The planning and zoning requirements for manufactured homes and mobilehome parks, in Government Code sections 65852.3 through 65863.13, are suspended for three years after the date of this Executive Order, with regard to housing project(s) in the impacted counties.

19. Any local government ordinances in the impacted counties which would preclude the placement and use of a manufactured home or recreational vehicle on a private lot for use during the reconstruction of a home, are suspended for three years after the date of this Executive Order for individuals impacted by the fires. Property owners placing manufactured homes or recreational vehicles on lots shall obtain permits as described in paragraph 12 to ensure health and safety standards are met that are consistent with the standards set forth herein.

20. All state agencies with responsibility, regulatory authority or expertise related to recovery efforts in connection with these fires shall cooperate fully and act expeditiously in coordination with the California Resources Agency and the California Environmental Protection Agency, to facilitate the mitigation of the effects of the fires and the environmental restoration of the affected areas.

This Order is not intended to, and does not, create any rights or benefits, substantive or procedural, enforceable at law or in equity, against the State of California, its agencies, departments, entities, officers, employees, or any other person.

**I FURTHER DIRECT** that as soon as hereafter possible, this Order be filed in the Office of the Secretary of State and that widespread publicity and notice be given of this Order.



**IN WITNESS WHEREOF** I have hereunto set my hand and caused the Great Seal of the State of California to be affixed this 18th day of October 2017.

EDMUND G. BROWN, JR.
Governor of California

**ATTEST:**

ALEX PADILLA
Secretary of State

# CERTIFICATE OF SERVICE

Case Name:   **Issa, Darrell, et al v. Gavin**          No.   **2:20-cv-01044 MCE CKD**
             **Newsom, et al**

I hereby certify that on <u>June 25, 2020</u>, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on <u>June 25, 2020</u>, at Sacramento, California.


Tracie L. Campbell                                   */s/ Tracie Campbell*
Declarant                                            Signature

SA2020301341
34189868.docx